## Northen, *et al. v.* Tatum.

### Bill to Settle Partnership, etc.

(Decided Nov. 18, 1909.    51 South. 17.)

1. *Partnership; Settlement and Dissolution; Contract Between; Intent.*—Where certain parties owned a shingle outfit and another party owned land on which there was timber suitable for shingles, and the partnership was formed between the parties to make shingles from the timber, the party owning the land agreeing to pay for a one-third interest in the outfit in timber cut at the price indicated,

[Northen, et al. v. Tatum.]

and the operation resulted in a loss because of a failure to sell the product, and the contract for the sale of the timber provided for a fixed price on the basis of shingles cut at the price stipulated, the time being limited within which the timber could be cut. such contract did not pass the title to all the pine timber suitable for shingles in praesenti. but only to the timber that was cut into shingles, and hence on the dissolution of the partnership, the party furnishing the timber or selling the timber could not claim a vendor's lien.

2. *Same; Breach by Firm.*—Where there was a partnership between a firm and a third party, in a proceeding by the third party for settlement and dissolution of the partnership because of a breach by the firm of the partnership agreement. where the firm breached the agreement, the third party was entitled to be compensated provided he was not at fault in respect to the firm's default.

3. *Same; Equity; Jurisdiction.*—Where equity has acquired jurisdiction for an account and settlement of the partnership it will proceed to a complete determination of all controversies touching the partnership. of its demands against the members, and their claims against the concern.

4. *Same; Measure of Damages.*—Where it was agreed between the partners to cut and manufacture into shingles certain timber belonging to one of the firm. to be paid for at an agreed price for the shingles made. the measure of the partner's damage was the amount of the timber left uncut on the land measured by its value when converted into shingles at the stipulated price. less the value of that timber, as it stood at the time of the breach of the agreement

5. *Same; Claims by Partners; Status.*—Damages awarded to one partner for the breach by the others of an agreement between them must take the same course and will have the same effect as any other claim against the firm.

6. *Same; Expenses and Losses; Liability of Partner.*—Where the articles of partnership do not otherwise provide. the expenses and losses of a partnership are to be borne by all the members in proportion to their share in the business; so losses occasioned by the conduct or omission of a managing partner will not be charged against him unless he has been guilty of fraud, bad faith of culpable negligence.

7. *Same; Solicitor's Fees.*—If section 5219. Code 1907, has any application to a proceeding to dissolve and settle partnership, it is improper to claim attorney's fees in the original bill, and hence, they should not be claimed.

8. *Equity; Pleading; Demurrer.*—Where a bill is filed to dissolve a partnership and seeks to charge the managing partner with the losses, it should contain averments imputing fraud. bad faith or culpable negligence to him, and if it fails, a demurrer is the proper way to reach the defect.

9. *Contracts; Construction.*—A contract must be so construed, if possible, as to give effect to all its provisions.

APPEAL from Clay Chancery Court.

Heard before Hon. W. W. WHITESIDE.

24—104

[Northen, et al. v. Tatum.]

Bill by J. W. Tatum against A. A. Northen and another, to dissolve and settle a partnership, and for other purposes. From a decree for complainants respondents appeal. Reversed and remanded.

WHATLEY & CORNELIUS, for appellant.—One partner cannot sue another as to partnership matters until there has been a settlement and a balance struck—Minor, 103; 4 Port. 497; 1 Stew 19; 10 Ala. 690; 58 Ala. 618; 82 Ala. 459. The bill was not sufficient.—2 Mayf. 19. If the bill sought to charge the managing partner with the losses, it should have averred, bad faith or culpable negligence on his part, and demurrer was the proper way to raise this question.—22 A. & E. Ency. of Law, 128. Attorney's fees are not recoverable.—*Foster v. Foster,* 126 Ala. 259; *Humes v. Land Co.,* 98 Ala. 461; *Strong v. Taylor,* 82 Ala. 217.

D. H. RIDDLE, for appellee.—The bill was sufficient for a settlement and dissolution of the partnership.—4 Mayf. 404. Complainant was entitled to attorney's fees. —Sec. 5219, Code 1907. Counsel discuss other assignments of error, but without citation of authority.

McCLELLAN, J.—That the bill here possesses equity in the respect that it seeks a settlement and dissolution of a partnership composed of complainant (appellee) and respondents (appellants) cannot be doubted.—*Tutwiler v. Dugger,* 127 Ala. 191, 28 South. 677. Hence the general demurrer, assailing the bill for want of equity was properly overruled.

Many of the questions raised by the numerous grounds of demurrer to the bill are determinable by a construction of the contract whereby the partnership was formed, and in which instrument property (timber) of the

complainant was undertaken to be dealt with in pursuit of a purpose to afford the firm, contemplating the manufacture of shingles, material with which to operate. The pivotal question, on construction, is whether, by the terms of the instrument, the firm became invested with the title to all of the pine timber on the described lands, and therefore obligated to pay for all of such timber suitable for the purpose set down in the instrument, or whether the firm became vested with the title to only so much of the timber as was "cut" into shingles, and hence liable to complainant, at the stipulated price, to that extent only?

These features of the contract appear to be controlling, and no others in the instrument impress us as qualifying them on the inquiry stated. We quote: "That the said party of the second part (complainant) hereby sells and conveys to the shingle company, composed of both parties to this contract (i. e., complainant and Northen and Wallace, respondents), all the pine timber suitable for making shingles on the following land: (Describing about 600 acres.) The price agreed to be paid for said timber being 40 cents per thousand shingles for all the shingles cut from said timber. Beginning at that time (i. e., when sufficient timber had been cut to equal $800, at the price stipulated above, said sum being the purchase price to be paid by complainant for a one-third interest in the 'shingle outfit' and two notes and a wagon), the shingle company shall make monthly settlements with said party of the second part for all shingles cut at the price named. It is agreed that the time allowed to cut the timber mentioned shall be 18 months from the date of this contract, and should it be found necessary to put in other machinery in order to cut the timber within that time it is mutually agreed that the necessary machinery shall be installed." The

situation and circumstances surrounding the parties
were:   That Northen and Wallace owned a "shingle
outfit" and the other personal property mentioned; that
Tatum owned about 600 acres of land on which was
suitable shingle timber; that the Wallace Shingle Com-
pany was formed, Tatum agreeing to pay $800 for a
one-third interest in the outfit, timber cut to that
amount, at the price before indicated, being the medium
of payment of said sum.   The firm began the cutting of
the timber, and the operation resulted in a loss, because,
it is averred in the bill, of the failure of the actual oper-
ators, viz., Wallace and Northen, to sell the product as
they should have done.

What was the intention of the parties in respect of
the vesting of title to timber of the described charac-
ter on these lands?   A careful consideration of the sit-
uation of the parties, the circumstances surrounding
them at the time of contracting, the averred and com-
mon purpose of the parties, and the terms of the instru-
ment lead us to conclude that it was not the intent to
pass in præsenti the title to all of the pine timber suit-
able for shingle manufacture on the lands described.   In
other words, the intent was to confer on the concern
the right to take timber of the defined character, and to
obligate the firm thereunto, within the 18 months from
the date of the contract, rather than to invest in præsen-
ti the title to all of the timber of the described class.
These reasons move us to the conclusion stated:

If the contract had only contained the expression
"hereby sells and conveys" a certain class of timber,
there would be little doubt but that the investment of
title in præsenti was intended, whether fully effectuat-
ed or not.   But this effect cannot be given the instru-
ment without ignoring other provisions of it.   All pro-
visions of a contract must, if possible, be given effect.

The provisions qualifying the general statement to sell and convey are set down in the quotation before made. First of these provisions is that the price to be paid was firmly fixed upon the basis of "shingles cut from said timber;" the second is that monthly settlements should be made "for all shingles cut" at the price stipulated; and the third is that a limit in point of time was provided within which, even though extra effort and expense were required, the timber should be "cut." It must, of course, be admitted that stipulations as to payment—its mode and period of exaction—do not in all cases or necessarily control the question whether title of the subject of the sale passes. But here the summarized provisions are entitled to weight and influence in the ascertainment of the intention of the parties in the regard under consideration. No provision for payment for the timber is made, save and except as that was anticipated from an appropriation, a cutting, thereof by the enterprise indicated. It is not reasonable to suppose that the timber owner would have, had he intended to part, at once and in the beginning, with the title to the timber of the defined class, left the contract entirely silent as to payment otherwise than as a compliance with a contract to cut the timber into shingles within a stipulatetd period would afford that recompense to him. In short, this instrument under consideration seems clearly to us to have contemplated no vesting of title to the timber of the defined class otherwise than as it was cut into shingles. There is, hence, no foundation for the claim of a vendor's lien in favor of complainant; the title to timber not passing to the firm until the timber had become a chattel by severance from the soil.

Proceeding from this status as fixed by the stated interpretation of the instrument exhibited with the bill,

it is apparent that, if the firm failed to cut all of the timber of the defined class from the land described in Exhibit A, a breach of the agreement was committed by the firm; and hence the complainant is entitled to be compensated by the firm, provided he was blameless in respect of the firm's default, for such breach. The demurrer, in part, objects that for the assertion of this failure of complainant's claim against the firm a court of law is the proper forum. This contention is unsound, for the reason that equity, having acquired jurisdiction for the settlement of the accounts and dissolution of the partnership, will, as usual, proceed to the complete determination of all controversies touching the partnership, of its demands against the members thereof, and their claims against the concern. Unless the complainant, a member thereof, asserted in this proceeding his claim for the alleged breach of the argument, it is difficult to see how he could later sue thereon at law, if the equity court settled the accounts of, and dissolved, the partnership. At least the general and familiar practice of equity above stated justifies the complainant's prayer that all of the controversies relating to the partnership should be, in this one cause, determined.

If such breach is shown upon the hearing on the merits, and if he is also shown to have been blameless in respect to such breach, the measure of the complainant's damages must necessarily be this: The amount of the timber left uncut on the land, as that appears from its value when converted into shingles at the stipulated price of 40 cents per thousand, less the value of that timber as it stood, at the time of the breach of the agreement, on the land of complainant. Of course, on the accounting, the complainant's damages in this particular, if sustained, would take the course and have the effect of any other claim against the partnership, in which

concern the complainant seems to have held or now holds a one-third interest.

From some phases of the bill it appears to be the effort of the complainant to charge the partners actually operating or managing the business, to the agreed exclusion of the complainant, with losses consequent upon a failure to sell the product of manufacture at proper times or the best prices. While the contract expressly provides for "monthly settlements" with complainant "for all shingles cut, at the price named" therein, we do not find anything in the instrument requiring the sale of the shingles at any given time, or stated periods. Unless otherwise provided in the articles of partnership, the expenses and losses of a partnership are to be borne by all the members in the proportion they share in the profits; and losses occasioned by conduct or omission of a mangaging partner will not be charged against him, unless he has been guilty, in the conduct or omission, of fraud, bad faith, or culpable negligence.—30 Cyc. pp. 452, 453, and authorities in notes thereon; 22 Am. & Eng. Ency. Law, p. 128, and notes.

This bill contains no averments imputing fraud, bad faith, or culpable negligence to the managing members of the partnership, in consequence of which the losses described in the bill resulted. The demurrer was the proper mode of asserting this objection to the bill, and should have been sustained.

If it be assumed that Code 1907, § 5219, has application to this character of proceeding, there can be no doubt of the want of necessity, if not propriety, to claim the benefit of the statute in the original bill. If a sale of property should be finally found necessary in this cause, and, further, if it should then be ascertained that the services of the solicitor were "for the common benefit of all," and if the "discretion" is favorable to the

[Henry, et al. v. Tennessee Live Stock Co.]

allowance, the application of the statute will then become a question requiring decision. The averments of the bill, in this particular, are surplusage.

These considerations dispose of all of the errors assigned and argued. The rulings of the court below are not in entire accord with the views expressed above. The decree is therefore reversed, and the cause is remanded for further proceedings consistent with the principles announced.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.