## Sanson, et al. v. Connolly, et al.

(Decided December 8, 1910.)

Appeal frm Pike Circuit Court.

1. Res Adjudicata.—Where a person claiming to own land brought an action in ejectment to recover it, and a judgment was rendered dismissing this action after it had been prepared for trial on its merits, the judgment being unmodified and unreversed, is a bar to a subsequent suit in equity to recover the same land.

2. Burden of Proof.—Where a party seeks to avoid the effect of a judgment upon the ground that he was not a party to the action in which it was rendered, and this is put in issue, the burden is upon him to show that he was not before the court when the judgment was rendered.

3. Partial Record.—When an appeal is prayed in the Court of Appeals, and notice of the schedule is not served upon the adverse party as required by section 737 of the Code, and only a partial record is brought up, we will presume that the omitted part sustains the judgment appealed from.

CASSIUS M. WHITT and P. B. STRATTON for appellants.

J. S. CLINE and M. C. KIRK for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In March, 1894, John C. Sanson, for love and affection, conveyed to members of his family, including Riley Sanson, A. W. Hatfield, Tennessee Campbell and Caroline Steele, the mother of the appellant, Melvin Steele, four different parcels of land, reserving to himself the coal, minerals and timber. Soon afterwards,

he executed to W. A. Connolly, to whom he was indebted, a mortgage upon the coal, mineral and timber rights reserved. After this, creditors of Sanson brought suits attacking the conveyances made to the members of his family as fraudulent, and the conveyance to Connolly as a preference. The actions were consolidated, and proceeded under the name and style of Berry Gilliam, et al. v. J. C. Sanson, et al., and a judgment was rendered in 1896 declaring the deeds and mortgage fraudulent, and an order was entered directing a sale of the land to satisfy the debts of the various creditors. In October, 1896, in pursuance of this judgment, the land including the timber and mineral rights, after being appraised at the sum of $6,825.00, was sold, when W. A. Connolly became the purchaser at the price of $4,500.00. Thereafter, the Commissioner filed his report of sale, to which exceptions were entered and overruled, and thereupon the sale was confirmed and a deed made to the purchaser. In 1898, the appellants here, Riley Sanson, A. W. Hatfield, Melvin Steele and Tennessee Campbell, prosecuted an appeal to this court from the judgment, declaring the deeds fraudulent and ordering the land sold, but failing to file the record in time, the appeal was dismissed in 1899. In 1902, the appellants, Riley Sanson, A. W. Hatfield and Tennessee Campbell, grantees in the deeds that were set aside as fraudulent, brought separate actions in ejectment in the Pike circuit court to recover from Connolly, the judgment purchaser who was then in possession, the land and damages for its detention. In answer to these several suits, Connolly set up that appellants were parties to the suit in which the land was ordered to be sold, and thereby barred from prosecuting these actions to recover it. His answers were controverted by reply, and afterwards the several actions were consolidated and in 1906 a judgment entered reciting that:

"The consolidated causes coming on to be heard, and the court having the same under consideration, and after hearing all the evidence, and the reading of the pleadings and exhibits, and the argument of counsel, and the court being sufficiently advised, adjudges that the foregoing consolidated causes be dismissed. It is therefore adjudged by the court that the defendant, the executor of W. A. Connolly, recover from the plaintiffs his costs herein expended, to which judgment dismissing

plaintiff's causes of action the plaintiffs object and except and pray."

After the entry of this judgment from which no appeal was taken, and in 1906, the appellants, Riley Sanson, A. W. Hatfield and Tennessee Campbell, filed separate but similar petitions in equity against the executor of Connolly and other persons interested in his estate. These petitions in substance set up that each of the appellants, plaintiffs below, were infants at the time the several deeds were made to them by J. C. Sanson. That although they were made parties defendant to the suit to have the deeds set aside as fraudulent, no process was ever served upon them, and therefore the judgment in so far as it set aside the conveyances made to them was void, and W. A. Connolly took no title to the land by virtue of his purchase at the judicial sale. They prayed that the judgment and sale to Connolly made thereunder be set aside, and that they each be adjudged the owner of the land conveyed to them by J. C. Sanson. To these several petitions the defendants, appellees here, and who are the executor and others interested in the estate of Connolly, deceased, filed answers, in which after traversing the petition they set up in bar the judgment in the consolidated cases of Berry Gilliam, et al., v. J. C. Sanson, et al., under which the land was ordered to be sold and under which Connolly became the purchaser as before stated. They further pleaded in bar to the actions the suits in ejectment before mentioned and the judgment therein. These actions were consolidated, and after being prepared for trial the following judgment was entered:

"The above consolidated causes being submitted for judgment, and the court after hearing all the pleadings, exhibits and evidence read, and argument of counsel, and being sufficiently advised, adjudges that the plaintiff's petition in the foregoing consolidated cases be dismissed. It is further adjudged that the defendants in the said four consolidated causes recover of the said plaintiffs all their costs herein expended, for which execution may issue. To the above judgment plaintiffs object, except and pray an appeal to the Court of Appeals, which is granted."

And it is this judgment that we are now asked to review. It will be observed that the appellants are seeking in this equitable action to recover possession of the

land conveyed to them by J. C. Sanson upon the ground that no summons was executed upon them in the suits brought by creditors of J. C. Sanson to set aside as fraudulent these conveyances, and therefore the judgment setting them aside as fraudulent and all orders and proceedings had in the case in which this judgment was rendered were void. It will further be noticed that in the ejectment suits brought by each of the appellants in 1902 they sought the same relief as they did in these actions, the only difference being that the ejectment suits were in ordinary and these actions are in equity. In both the end to be accomplished was precisely the same, namely, the recovery of the land. So that, the principal question now before us is whether or not the judgment dismissing the suits in ejectment from which no appeal was prosecuted and which stands unmodified, was not a complete bar to these actions. If that judgment is a bar, it is of course unnecessary to look back of it to inquire into the regularity of the proceedings in the suits of the creditors of J. C. Sanson to have these several conveyances set aside. If the plaintiffs in the ejectment actions were not before the court in the suits to set aside the conveyances to them, then the judgment setting aside these conveyances was void, and it would necessarily follow that they were not divested of the title conveyed to them by J. C. Sanson. This being so, they could in the ejectment suits have recovered possession of the land, as the title was still in them, and Connolly as to them was in the wrongful possession. And so it seems manifest that in the ejectment suits, they could have obtained all the relief they are seeking in these equitable actions. As counsel for appellants very correctly says, "Appellants had the right to elect whether they would proceed" in ejectment or in equity in attacking the void judgment. And, having made the election, and proceeded in ejectment, it is plain that the judgment in the ejectment suits is a bar to these suits, except the one brought by appellant, Melvin Steele. It is said, however, by counsel for appellants that the ejectment suits were dismissed without prejudice, but counsel in making this statement is not supported by the record. The record shows that on February 23, 1906, this order was made in the consolidated ejectment suits:

"This day came the plaintiffs in the above entitled consolidated actions and enter therein motion and

moved the court to dismiss said action without prejudice. The court being sufficiently advised, overruled said motion, to which ruling of the court the plaintiffs except.''

And thereupon the judgment in the consolidated actions heretofore set out was entered. We think the court erred in refusing to permit the plaintiffs in the ejectment suits to dismiss them without prejudice before the judgment was entered, but, if the plaintiffs desired to avoid the effect of this error, they should have prosecuted an appeal from the final judgment dismissing their action. This they did not do. We may further add that the ejectment cases were prepared for trial upon their merits, when the final judgment was rendered.

As to Melvin Steele, the record shows the following facts: He is a son of Caroline Steele, a daughter of J. C. Sanson, and who was a grantee in one of the deeds set aside as fraudulent. She was a plaintiff in one of the ejectment suits, but it appears from an order made in 1906 that she had died before the commencement of the ejectment suits prosecuted in her name, and so the action in her name was dismissed or abated. This being so, of course the ejectment suit was no bar to the prosecution of the action in equity by Melvin Steele, her only heir at law. But, Caroline Steele was a party defendant to the suit by the creditors of J. C. Sanson to set aside the conveyances, including the one made to her, and in that action she was served with process. It is said, however, that she died before judgment was rendered in the suits to set aside the fraudulent conveyances, and that there was no revival of the action against her personal or real representative. But we do not know from the record whether this action was revived or not, or whether Melvin Steele after the death of his mother was or not made a party and properly brought before the court. Because the appellants have brought here only a partial record of the orders and proceedings in the suit to set aside the fraudulent conveyances, and this without the notice required by section 737 of the Code when the appeal is prayed as this was in this court. What the full record would show as to the proceedings taken and had after the death of Caroline Steele, we do not know, but the presumption is that if she died during the pendency of the action it was properly revived and prosecuted in reg-

ular form against her only child, Melvin Steele. And this presumption will require us to affirm the judgment as to Melvin Steele unless it be that the burden was upon the appellees, defendants below, to show that Melvin Steele was properly before the court, and they failed to do this. The petition filed by Melvin Steele set up the conveyance by J. C. Sanson to Caroline Steele, his mother, and her death soon after the deed was made, leaving him as her only child and heir at law. That various creditors of J. C. Sanson filed suits attacking the conveyances, in which suits a judgment was rendered directing a sale of the land. He further stated that "no service, actual or constructive, was ever had or made on or upon him previous to the rendition of the aforesaid judgment or at any time since. That notwithstanding his infancy, no guardian ad litem was appointed to defend for him, and he was proceeded against as an adult, as is shown and evidenced by the records of the hereinbefore mentioned suits; and that judgment was rendered without any revivor against him." He set up that by reason of these facts the Pike circuit court had no jurisdiction to render the judgment setting aside the deed of conveyance executed by J. C. Sanson to Caroline Steele, and that said judgment and the deed made thereunder were void. And after describing the land, he prayed that the judgment ordering the sale be vacated and set aside, and that he be adjudged the owner of the land. To this petition the defendants, now appellees, filed an answer, and pleaded the judgment rendered in the action by the creditors as a bar to the prosecution of this action. To this answer a reply was filed, controverting the affirmative matter in the answer. Melvin Steele's whole cause of action was based on the proposition that neither Caroline Steele, his mother, nor himself were before the court in the suit by the creditors of J. C. Sanson, in which the conveyance to Caroline Steele was set aside. This being so, it seems to us that under the pleadings the burden of proof was upon Melvin Steele to show that the action was not revived after the death of Caroline Steele, and that he was not properly before the court. In other words, the burden was upon him to sustain the averments of his petition, and this he failed to do. If the action was not revived, or he was not before the court, these facts would be shown by the record and orders of court in the action by the creditors of J. C.

Sanson. But, as before stated, there is only a partial transcript of the orders of court and record in that case, and we cannot determine from them whether he was before the court or not.

Upon the whole case, we have reached the conclusion that the judgment should be affirmed, and it is so ordered.