### Stevens & Elkins, et al. v. Lewis, Wilson, Hicks Company.

(Decided February 23, 1916.)

#### Appeal from Barren Circuit Court.

1. Appeal and Error—Oral Evidence Not in Record—Effect of.— Where upon the question of jurisdiction in the lower court both affidavits and oral testimony were introduced by the parties, and upon appeal the oral evidence is absent from the bill of exceptions, the appellate court will not be authorized to hold that the trial court erred in overruling the motion to quash the summons and return. Since one who prosecutes an appeal upon a partial transcript does so at his peril, if it appears that part of the testimony used upon the trial is not copied into the transcript, it will be presumed to support the ruling of the court upon the question in connection with which it was offered.

2. Appeal and Error—Conflicting Evidence—Issues Properly Submitted to Jury.—In an action for the alleged breach of a contract

to cut and saw timber, evidence examined and held sufficient upon each issue of fact to require submission to the jury.

3. Trial—Taking Question From Jury—Conflicting Evidence.—In an action upon defendant's alleged breach of a contract, in failing in each of several years to saw or deliver the contract quantity of lumber, where no admission of such failure is contained in any pleading filed by them and where, though the great weight of the evidence shows such failure, some of defendants' evidence tended to excuse it upon grounds set out in the answer, the question whether there was a failure on the part of defendants to deliver the contract quantity of lumber in any of such years, and to what extent, if any, such failure was excused by the acts of plaintiff, should have been submitted to the jury.

4. Logs and Logging—Measure of Damages.—Where defendants undertook to saw and deliver on board cars a certain amount of lumber each year for several years, and it is apparent from both pleading and proof that such lumber would be for sale on the market as at the time and place the contract required it to be delivered, its market price at such place and time must be accepted as its market value; therefore, the market price or profits that might have been realized elsewhere had no place in estimating the damages sustained by plaintiff from defendants' failure to saw and deliver on board cars, at the place of delivery fixed by the contract, the whole amount contracted for in each year.

5. Damages—Interest—When Not Recoverable.—Where, as here, the contract neither provides a penalty payable under certain conditions, nor contains any stipulation fixing an amount to be recovered as liquidated damages, interest cannot be allowed by way of damages.

6. Logs and Logging—Damages for Breach of Contract—Measure of. —The damages recoverable for defendants' failure to saw and deliver in each of several years the full amount of lumber as agreed in their contract with plaintiff, are the profits that would have accrued to plaintiff from defendants' performance of the contract, such profits to be ascertained by first determining from the evidence the market value at the time and place of delivery fixed by the contract of such part of the lumber as was not delivered each year, and deducting therefrom the prices plaintiff would under the contract have paid for the manufacture and delivery of same, if delivered, and the value of such of the timber, if any, whether in trees or logs, left unsawed in such year, as would, if sawed, have supplied the deficiency in lumber.

W. L. PORTER, C. H. HATCHETT and T. G. STUART for appellants.

BAIRD & RICHARDSON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellee, Lewis, Wilson, Hicks Company, a corporation engaged in the lumber business, on the trial of this action in the court below, recovered of the appellants, J. A. Stevens and H. T. Elkins, partners constituting the firm of Stevens & Elkins, and H. L. Stevens, their surety, a verdict and judgment for $3,500.00, claimed by way of damages for the alleged breach by the principals of a written contract, made by them with appellee January 9, 1909. The refusal of the circuit court to grant appellants a new trial led to the prosecution, by the latter, of this appeal.

The great length of the contract renders its insertion in the opinion impracticable. It was made in the city of Louisville, Jefferson county, and was to be performed in Rockcastle county. The appellants, J. A. Stevens and H. T. Elkins, were then and are now residents of Madison county, and the appellant, H. L. Stevens, of Clark county. Appellee's corporate domicile and chief office were then and are now in the city of Glasgow, Barren county.

The contract elaborately set forth the several undertakings of each of the parties, and required of each the execution to the other of a bond for its faithful performance; the appellant, H. L. Stevens, becoming surety in the bond executed by appellants. The contract, among other things, obligated the appellants, Stevens & Elkins, in consideration of the sums therein stipulated to be paid them by appellee, to furnish and operate at their own expense a band and circular saw mill at some convenient place on the lands containing the timber to be sawed; to cut, haul to the mills and saw into such grades as appellee might direct, 7,500,000 feet of lumber contained in the timber on two surveys of land in Rockcastle county, known as the Gad and Susan Ann tracts, and such other timber as appellee might direct; to stack the lumber on the mill yards, where it should remain on sticks ninety days, or a shorter time if desired by appellee, and, finally, to load the lumber on board cars to be procured by appellee at Wildie, Kentucky, not less than 2,500,000 feet during the year 1909, nor less than a like quantity each succeeding year, until all the timber on the land should be manufactured into lumber. It was also provided in the contract that appellee should have the right to remove from the chestnut oak timber on the land, tan-bark, if desired, to be re-

moved upon the cutting of the timber from the stump, after which the appellants were to saw the logs into lumber before any injury resulted to them from exposure to the sun or weather. The contract further provided that the cutting of the timber, its manufacture into lumber, measuring thereof and loading on the cars, would be under the immediate supervision and direction of an officer, agent or employe of appellee.

The breaches of the contract alleged in the original and two amended petitions are, in substance, as follows: (1) That the appellants, Stevens & Elkins, failed to manufacture into lumber from the timber in question, during any of the years covered by the contract, 2,500,000 feet of lumber as required by the contract, and in fact only manufactured in 1909, 1,291,126 feet; in 1910, 2,337,180 feet; in 1911, 2,114,356 feet, and in 1912, 1,447,288 feet of lumber; that during these years the market declined and lumber went down in value, whereby appellee lost the sale of and profit on the difference between the 2,500,000 feet of lumber which the contract obligated appellants to manufacture in each of the years mentioned and what they did manufacture during each of these years, whereby appellee was damaged in the sum of $5,000.00; (2) that appellee sustained special damages by way of interest on account of being deprived, during each of the years mentioned, of the money it had invested in so much of the timber as represented the difference between the quantity of lumber actually manufactured and the quantity the contract required to be manufactured during each of these years, and the use of which money it was prevented from enjoying by the failure of appellants, Stevens & Elkins, to manufacture the 2,500,000 feet of lumber therefrom during each of these years, as provided by the contract; this item of damages amounting to $4,500.00; (3) that the appellants, Stevens & Elkins, by unreasonably delaying to saw into lumber in 1909, 750,000 feet of logs and in 1911, 500,000 feet of logs, from which appellee had removed tan-bark, and by permitting the logs to lie in the woods until they were injured by exposure to the sun and weather, caused appellee to sustain $2,000.00 damages; (4) that by reason of the appellants', Stevens & Elkins, violation of the contract in the particulars above mentioned, appellee was compelled to pay out large sums of money by way of salaries and wages to its agents having in charge the super-

vision of the cutting, manufacturing, grading and measuring of the timber and lumber mentioned in the contract, none of which expenditures would have been necessary if there had been a performance of the contract on the part of appellants as required by its terms. The damages claimed on this account were $3,000.00.

The answer of appellants, as amended, in addition to a traverse of the averments of the petition, as amended, interposed the following grounds of defense: (1) That the contract providing that the timber should be manufactured into lumber was fully performed as directed by the appellee, and whatever delay there may have been in its performance was caused by the act of God and the conduct of appellee; (2) that by the act of appellee in requiring them to saw 500,000 feet of small oak, poplar, chestnut and pine timber on the band mill instead of on the circular mill, which would have performed the work more rapidly, they lost three months' time in 1909; and by its further act in stopping appellants' circular saw mill thirty days to install the band mill, they lost thirty days' time in the same year, during which they could have sawed 300,000 feet, in addition to the output of that year, and that for the foregoing reasons they failed to manufacture the first year the 2,500,000 feet of lumber required by the contract; (3) that the prevalence of ice and snow, permitted by the act of God, prevented them from operating their mills for six months of the time they were engaged in performing the contract; (4) that frequent and long delays were caused in the loading and shipment of the lumber manufactured by them, by the failure of appellee to provide cars at Wildie for that purpose, and by reason thereof they failed to saw and deliver on the cars during the existence of the contract at least 500,000 feet of the lumber it required them to manufacture. That one Hagan, employed by appellee to measure the lumber before the hauling of it by appellants to Wildie for loading on the cars, by his delay in getting to the places where the lumber was to be measured mornings and by quitting too early afternoons during the years appellants were doing the sawing required by the contract, prevented them from sawing and delivering 2,000,000 feet of the lumber; (5) that the injuries resulting to the chestnut oak logs from which the bark was stripped by appellee, were caused by its act in stacking on the logs to dry,

the bark removed therefrom, and requiring appellants not to remove or saw the logs until it removed the bark stacked thereon, which it did not do for more than ninety days; (6) that it was a part of the contract that appellants were to haul and deliver the lumber at Wildie after it was sawed, as and when directed by appellee; that appellants hauled and loaded the lumber on cars at Wildie as and when directed by appellee, the only delay in respect thereto being caused by appellee, as the lumber was all hauled and loaded as and when directed by it; and that this provision of the contract was, by the fraud or mistake of the draughtsman thereof, omitted to be inserted therein; (7) that by fraud or mistake on the part of appellee's agent in charge of the measuring of the lumber manufactured by appellants, much of the lumber made by them was incorrectly measured or not measured at all.

The appellant, H. L. Stevens, by a separate answer to the petition, as amended, denied liability on the bond upon which his name appears as surety, because it was executed after the contract between appellee and the principals and was without consideration as to him. Moreover, that appellee and the principals, without his knowledge or consent, changed the contract by the former's requiring and the latters' sawing other timber than that required by the contract, and timber from other lands than that embraced in the contract, which acts constituted a novation of the instrument and discharged him from liability thereon. The answers were controverted of record or by reply.

The first ground urged by appellants for the reversal of the judgment is that the trial court erred in overruling their motion to quash the summons served upon each of the defendants, and the return thereon, it being their contention that the Barren circuit court did not have jurisdiction of the case or of their persons. The appellant, J. A. Stevens, was served with summons in Barren county, and the appellants, H. T. Elkins and H. L. Stevens, were served therewith in Clark county. This motion was made before appellants answered or otherwise made defense to the action and was based on the affidavit of J. A. Stevens, in which it was stated that appellee's general manager, W. T. Hicks, who was at the time in Rockcastle county and had charge of its business there, after having paid appellants for the work

done by them under the contract as it progressed, except a balance of $1,100.00 due him upon the conclusion of the work requested him to go to Glasgow for the purpose of receiving the $1,100.00, giving as a reason therefor that one of appellee's stockholders had died and the presence of his personal representative was desired in making a final settlement between appellee and the appellants, and a settlement could only be made with the approval of the personal representative of the deceased stockholder, by J. A. Stevens' going to Glasgow for that purpose; and that upon his arrival at Glasgow appellee refused to pay him the $1,100.00, brought suit against appellants and obtained the service of the summons on him before he left the city. The affidavit contained the further statements that by the means mentioned, Hicks, appellee's agent, lured J. A. Stevens to Glasgow for the fraudulent purpose of giving the Barren circuit court jurisdiction of his person and those of his partner, Elkins, and their surety, H. L. Stevens, that appellee might obtain an unfair advantage over them in trying the case in Barren county, where its officers and stockholders resided and were well known, and the appellants were strangers. The statements in the affidavit of the appellant, J. A. Stevens, were controverted by the affidavits of W. T. Hicks and V. M. Baird, one of appellee's attorneys. In addition to the affidavits mentioned, which appear in the bill of exceptions, it is shown by the record that oral testimony was also introduced on the hearing of the motion, none of which, however, is contained in the bill of exceptions.

As said in Sublett v. Gardner's Admr., 164 Ky., 385:

"While the appellant is not required to bring up the entire record, the rule is well settled that one who prosecutes an appeal upon a partial transcript does so at his peril; and, if it appears that part of the testimony used upon the trial is not copied into the transcript, it will be presumed, in support of the judgment, that it would sustain the averments of the appellee's pleading. McKee v. Stein, 91 Ky., 240; Sanson v. Connolly, 141 Ky., 120."

This rule also obtains in equitable actions.

In Graves Committee, et al. v. Lyons, 166 Ky., 446, we held that "where, in a proceeding in equity oral testimony is given and heard and a party desires the benefit of it upon an appeal, it must be made a part of the record by a bill of exceptions, which must be prepared within

the same time and in the same manner as a bill of exceptions is required to be prepared in actions in ordinary." Shannon v. Stratton, 144 Ky., 26; Knech v. Home Tel. Co., 121 Ky., 492; Du Poyster v. Fort Jefferson Imp. Co., 121 Ky., 518. In the absence of the oral evidence from the bill of exceptions, we are not authorized to hold that the trial court erred in overruling the motion to quash the summons and return.

We will not enter upon a discussion of the great mass of evidence introduced on the issues made by the pleadings. It is sufficient to say that there was a contrariety of evidence upon practically every issue of fact presented, that of appellee tending to prove the breaches of the contract in the particulars alleged in the petition, and that of appellants to establish the grounds of defense relied on in their answer. It is apparent from what has been said of the evidence that the issues of fact should have been submitted to the jury for decision, and it remains to be determined whether the complaint made by appellants of the instructions under which they were submitted is well founded.

As the instructions are so numerous and their insertion in the opinion would unduly increase its length, we will merely indicate the errors we find in them and indicate the form in which they might have been made applicable to the case.

Instruction No. 1 should not have been given in the form appearing in the record, as it improperly advised the jury that the appellants, J. A. Stevens and H. T. Elkins, admitted failing in each of the years 1909, 1910, 1911 and 1912 to saw or deliver on board the cars at Wildie as much as 2,500,000 feet of lumber, whereas no such admission is contained in any pleading filed by them. The great weight of the evidence shows such failure, but as some of the evidence introduced by the appellants tended to excuse such failure upon the ground that it was caused by certain acts and conduct of appellee, set out in the answer and predicated in other instructions of the court, the question whether there was a failure on the part of appellants to deliver as much as 2,500,000 feet of lumber in any of the said years and to what extent, if any, such failure was excused by the acts of appellee, should have been submitted to the decision of the jury.

Instruction No. 2, whereby the trial court attempted to define the measure of damages, is radically wrong. It in substance told the jury that they should find for appellee "for any extra cost and expenses of its hands or employes, if any, you believe from the evidence that the plaintiff incurred, by reason of the defendants', J. A. Stevens and H. T. Elkins, failure to saw or deliver the lumber or any of it as set out in instruction No. 1, not exceeding the sum of $5,000.00, and if you believe from the evidence that at the time of the making of the contract read to you, the defendants, Stevens and Elkins, were notified, that the lumber was to be sawed or delivered by them for sale upon the market, and that it was in the contemplation of the parties to the contract to saw or deliver aboard the cars, the lumber referred to in the contract, or any of it, for sale on the market by plaintiff, in any of said years, and that the sale of said lumber or any of it was delayed in any of said years by said defendant's failure to saw more than it did saw or deliver aboard the cars 2,500,000 feet of said lumber in either of said years, and that the price of such lumber or any of it declined in the market in either of said years and that the plaintiff could and would have sold said difference in each of said years, if the defendants had sawed or delivered as aforesaid in each of said years said difference, and that by reason of their failure, the plaintiff had to sell any of the grades of said lumber of said difference at a lower price in the market, you will find for plaintiff such further damages, if any, it sustained by reason of the defendant's failure so to do, not exceeding on this account, the sum of $5,000.00. And if you further believe from the evidence that said lumber did not decline in the market in any of said years, and that the plaintiff was delayed in selling in the market in either of said years, the difference between the quantity of the lumber, which the defendants did saw in each of said years, and the 2,500,000 feet, they agreed to saw in each of said years, and by reason of the defendant's delay in sawing or delivering aboard the cars aforesaid for sale by plaintiff a sufficient quantity of said lumber to make 2,500,000 feet in each of said years, then in that event you will find for plaintiff, such further damages, that it thereby sustained, if any, in any sum not exceeding the legal interest on the market price of the differ-

ence aforesaid, not to exceed on this account the sum of $4,500.00."

The damages authorized by this instruction are wholly remote and speculative. Scarcely one of the elements it contains was proper to be considered by the jury in assessing the damages. There is no claim made in the petition that when the contract in question was made, it was entered into in contemplation of other contracts then or thereafter made by appellee, whereby it was to sell and deliver at certain agreed and market prices to other parties the lumber appellants undertook by the contract to manufacture for it, or that such contracts were known to appellants when they contracted with appellee, or that appellants in violating their contract with appellee compelled it to violate the contracts it had made with others, thereby causing it to lose the profits it would have made by performing such contracts. As said in Pulaski Stave Co., etc. v. Miller's Creek Lbr. Co., etc., 138 Ky., 372, quoting with approval the leading case of Hadley v. Baxendale, 9 Exch., 541:

" 'Where special circumstances have been communicated to a party, at the time of the making of the contract, which go to show that the breach will involve special damages, such damages may be recovered, although not the result of an ordinary breach. When a contract is made under special circumstances, and those circumstances are communicated to one of the contracting parties by the other, the damages resulting from the breach of the contract which they would reasonably contemplate are the amount of the injury which would ordinarily flow from a breach under those special circumstances. * * * When a party makes a contract, and at the time notifies the defendant that such contract is made with reference to a subcontract already entered into or contemplated, upon a breach he will not be confined to ordinary damages, but may recover such damages as necessarily result from the breach.' Feland v. Berry, 130 Ky., 328; Elizabethtown, etc. R. R. Co. v. Luthy, 98 Ky., 588; I. C. R. R. Co. v. Nelson, 97 S. W., 757, 30 R.; 114. Perhaps the latest reaffirmance by this court of the rule in question is found in American Bridge Co. v. Glenmore Distilleries Co., 107 S. W., 279, 32 Ky. Law Rep., 873, where, after citing many authorities, from the earliest down, it is said: 'And this rule, so far as we know, has never been successfully questioned since.' "

It is apparent from the pleading and proof in the instant case that the lumber appellants undertook to manufacture for appellee was or would be for sale on the market as of the time or dates the contract required it to be delivered at Wildie, and in the absence of allegation and proof to the contrary, its market price at Wildie as of the time or date of delivery fixed by the contract must be accepted as its market value; therefore, the market price elsewhere or profits that might have been realized elsewhere, had no place in estimating the damages sustained by appellee.

It is difficult to understand the precise meaning of that part of instruction No. 2, contained in the following language: ''And if you further believe from the evidence that said lumber did not decline in the market in any of said years, and that the plaintiff was delayed in selling in the market in either of said years, the difference between the quantity of the lumber which the defendants did saw in each of said years and the 2,500,000 feet they agreed to saw in each of said years, and by reason of the defendants' delay in sawing and delivering aboard the cars aforesaid for sale by plaintiff of a sufficient quantity of said lumber to make 2,500,000 feet in each of said years, then in that event you will find for plaintiff such further damages that it thereby sustained, if any, in any sum not exceeding the legal interest on the market price of the difference aforesaid, not to exceed on this account the sum of $4,500.00.'' We are convinced, however, that to allow interest as thus contemplated would in effect permit the recovery of double damages, which is unauthorized. The contract between the parties does not provide a penalty payable under certain conditions, nor does it contain any stipulation fixing an amount to be recovered as liquidated damages. It may be stated as a general rule that interest is not allowed on unliquidated damages or demands, for the very obvious reason that the person liable does not know what sum he owes and, therefore, can be in no default for not paying it. The damages in such cases are not only uncertain, but they remain so until fixed by a verdict or judgment; hence, where this is the condition, interest is not allowed by way of damages, either in actions arising from a breach of contract or in tort.

It is equally manifest that instruction No. 2 is also incorrect in authorizing the jury to award appellee dam-.

ages by way of compensation for salaries or wages claimed to have been paid by it to its employes charged with the duty of directing the sawing of the timber by appellants and inspecting and measuring same. Such expenditures were, as appears from the evidence, necessarily made by appellee for the services performed by its manager, Hicks, and its employes, Hagan and Hayes, in the sawing and delivery of so much of the lumber as was actually manufactured by appellants and received by appellee. It is not apparent from the evidence that Hayes was paid for any time lost by appellants' delay in carrying out their contract with appellee, but was only paid for such work as was actually done by him. The foregoing facts are shown by the testimony of B. L. Wilson, appellee's president, as are the further facts that the work of Hicks and Hagan was not confined to directing the sawing and delivery of the lumber required of appellants under their contract with appellee, inspecting and measuring same; but that they were at the same time, and during the continuance of the contract, carrying on timber and lumber operations for appellee in Powell county, this State; and, in addition, Hicks spent much of his time in other States giving attention to appellee's timber and lumber interests and business therein. In view of the evidence mentioned, we are unable to say that Hicks and Hagan would not have received the salary and wages paid them, respectively, by appellee, regardless of the duties required of them arising out of the contract between appellee and appellants. The evidence is indefinite as to how much, if any, time they lost from other duties of their employment by the failure of appellants to saw and deliver in any year the quantity of lumber required by the contract; and silent as to what part, if any, of the salaries they received were paid for time during which they should have been serving appellee, but were prevented by appellants' delay from doing so.

However, further consideration of this matter is unnecessary, as, in our view of the law, the damages recoverable here are the profits that would have accrued to appellee from appellants' performance of the contract; that is, the profits appellee would have made each year on the unsawed and undelivered portion of the 2,500,000 feet of lumber contracted to be delivered that year; such profits to be ascertained by first determining from the evidence what would have been the market value at Wil-

die, delivered on board the cars, as of the time of delivery fixed by the contract, of such part of the lumber, failed to be delivered in any year, as would, in addition to what was actually delivered in such year, have constituted 2,500,000 feet for such year, and deducting therefrom the prices appellee would under the contract have paid for the manufacture and delivery of same, if it had been delivered on board the cars at Wildie, at that time, and the value of such of the timber, if any, whether in trees or logs, left unsawed in such year, as would, if sawed, have supplied the deficiency. The result thus obtained would constitute the damages, if any, suffered by appellee.

We have not been referred to any case decided in this jurisdiction that rests upon a state of facts like those here presented, but the rule as to the measure of damages stated above seems to have been approved in Fail & Miles v. McRee, 36 Ala., 61, and in Northern, et al. v. Tatum, 164 Ala., 368, and, in our opinion, it is the only just one that can be applied to the facts of this case. As said in Sedgwick on Damages, vol. 2, section 609, under the title "General Principles of Recovery":

"A contract is conceived as a valuable right owned by the parties to it and a breach of the contract is regarded as depriving the owner of his contract right. The damage caused by the breach is therefore the damage caused by the destruction of a right of property and is measured by the value of the property. * * * A contract, as such, however, has no market value and damages for its breach must therefore be measured by its actual value. This value is most readily found by showing what would be the benefit of having the contract performed; that is, what would have been received upon performance of the contract, over and above what must be given to secure performance. If the performance of a contract would be profitable to the plaintiff; that is, if upon its performance by the defendant the plaintiff would have left in his hands more than it would have cost him to perform on his side, then the contract itself, entirely apart from the effect of the performance upon his other property, would have a certain pecuniary value measured by the amount of such profit remaining in his hands. This is the direct profit of the contract. If by reason of non-performance on the part of the defendant the plaintiff loses his contract he is entitled on the general principles of recovery

to its value and this value as has been seen is the direct profit. Such direct profit of a contract is therefore always recoverable in an action for the breach.''

The remaining instructions, Nos. 3, 4, 5, 6, and 7, given at the instance of appellee, seem to be unobjectionable in form and meaning. Instructions A, B, C, D, E, F, and G are predicated upon the several grounds of defense relied on in the appellants' answer. As there was evidence introduced in support of each of these grounds which tended to show that appellants' performance of the contract was prevented each year, in part by the conduct of appellee and in part by extraordinary weather conditions, and such evidence, with that of appellee contradictory of it, compelled the submission of the case to the jury, the instructions last mentioned were necessary to advise them of the law applicable to the several grounds of defense interposed by appellants. Appellee's counsel make no objection to these instructions and our reading of them convinces us that they are free from substantial error.

The evidence introduced in support of the defense interposed by the separate answer of the appellant, H. L. Stevens, surety in the bond of the appellants, Stevens and Elkins, though slight, authorized the submission of that question to the jury, and this was properly done by instruction F. The trial court's refusal of other instructions offered by appellants was not error.

On another trial of the case instructions 1 and 2 should be corrected and given in such language as will conform to the statement of the law expressed in the opinion.

Because of the errors in instructions Nos. 1 and 2, the judgment is reversed and cause remanded for a new trial consistent with the opinion.

Whole court sitting.