# Highland Motor Transfer Company v. Heyburn Building Company.

(Decided February 10, 1931.)

ROBERT L. PAGE for appellant.

PETER LEE, TABB, KRIEGER & HEYBURN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE LOGAN—
Reversing.

Appellant filed its petition in the Jefferson circuit court seeking to recover damages in the sum of $971.97 from the appellee on the following state of alleged facts:

Appellee, owning a lot at the southeast corner of Fourth and Broadway in Louisville, desired to erect thereon an office building. Whereupon, it employed a firm of architects to draw plans and specifications; that it was expressly provided that before any contract was awarded to any general contractor by appellee the architects should examine and pass upon the liability and

financial responsibility of all subcontractors; that no subcontractor should sublet any part of the work without the written consent of the architects; that appellee furnished the architects with information necessary for them to properly inform all contractors of what would be required, and, in turn, had prepared printed plans and specifications so that all persons bidding on any part of the work would be able to intelligently submit bids; that appellee awarded the contract for the construction of the entire building to the Struck Construction Company; that prior to the letting of the contract to the Struck Construction Company appellant submitted a bid for the foundation and masonry to that company which, in turn submitted the bid to the architects as agents of the owner; that thereafter the general contractor accepted the bid of appellant, but before the acceptance of the bid by the general contractor it was approved by the architects; that in the plans and specifications there was no information as to the character of soil, or material, that might be encountered in the excavation; that pursuant to the provisions of the specifications, appellant visited and made an inspection of the premises so that it might become familiar with the existing conditions and fully understand the nature and scope of the work required before submitting its bid to the general contractor; that appellee and its architects knew that the most practicable, cheapest, and best method to remove the earth and materials for the foundation was by steam shovel, and that it was equally as well known to them that the soil usually found in the immediate vicinity was sand, clay, and gravel; that in making its bid to the general contractor it contemplated the use of a steam shovel, and in the event other materials had to be removed that it would use picks and shovels in the ordinary manner; that the lot on which the work was to be done had been purchased by appellee fifteen years or more prior to the making of the contract for the erection of the building, and at the time of the purchase there was located on the lot a concrete and marble swimming pool in the basement of the building then on the lot; that after the purchase of the lot appellee razed the buildings thereon, but instead of removing the concrete and marble used in the construction of the swimming pool, it caused the swimming pool to be filled with earth and debris so that the concrete and marble could not be seen; and that for several years prior to the time of the making of the contract for the erection of the building

the lot remained vacant and was used as a parking space for automobiles.

It is alleged that in figuring its bid and making its bid on the excavation work appellee did not know of the existence of this swimming pool and could not have known of its existence by the exercise of ordinary care on its part; that when it undertook the work, and in the progress thereof, it discovered the hidden concrete and marble which could not be removed by the use of a steam shovel and that it became necessary to use an air compressor and other means more expensive than was contemplated by it when it entered into the contract with the general contractor, and that the additional cost of excavating the concrete and marble was $971.97; that if it had known of the hidden concrete and marble when it made its bid, the bid would have been $971.97 in excess of the amount called for in the contract; that appellee perpetrated a fraud on appellant in concealing the existence of the concrete and marble; and that it was the duty of appellee to reveal to its agents, the architects, and to those bidding on the work, that the hidden concrete and marble would be encountered.

It is alleged that appellee knew that the bids submitted by all general contractors, including the Struck Construction Company, would be based largely upon the bids made by the subcontractors as the bid made by the general contractor included the bid made by appellant, and appellee knew that the higher appellant bid upon the foundation the higher would have been the bid of the general contractor, and that it knew if it had revealed the existence of the hidden concrete and marble the cost of the excavation would have been increased; that after appellant completed its work it made demand for the payment of the extra cost caused by the removal of the hidden concrete and marble; and that appellee refused payment.

The trial court sustained a demurrer to the petition on the ground as stated in the briefs that there was no privity of contract between appellee and appellant. Appellant contends that it was not a suit on contract, but a suit for damages caused by deceit, and that it is therefore entitled to recover. The contention of appellant is that appellee knew of the hidden concrete and marble and that its architects who were to prepare the proper plans and specifications for subcontractors should

have disclosed the hidden obstruction which would be encountered in excavating the foundation.

Counsel for appellee contend that a subcontractor who has not perfected a mechanics lien cannot maintain an action for additional compensation against a property owner who has paid the principal contractor in full without notice of the claim of the subcontractor, and they rely on the case of Fidelity & Casualty Co. v. Martin, 163 Ky. 12, 173 S. W. 307, L. R. A. 1917F, 924; Spurrier v. Burnett, 207 Ky. 736, 270 S. W. 25; Watts v. Metcalf, 66 S. W. 824, 23 Ky. Law Rep. 2189; Doll v. Young, 149 Ky. 347, 149 S. W. 854; Hightower v. Bailey, 108 Ky. 198, 56 S. W. 147, 22 Ky. Law Rep. 88, 49 L. R. A. 255, 94 Am. St. Rep. 350. It may be conceded that the rule is as contended for by counsel for appellee, but the cases do not reach the point that we have before us. This is not an attempt by a third person to maintain a suit on a contract made for his benefit. The basis of the contention of appellant is that appellee is responsible to it because it did not disclose, or cause to be disclosed, the hidden obstruction, when if it had done so the bid of the general contractor would have been so much higher as its bid was governed, to a large extent, by the bids of the subcontractors. The subcontractor did not bid as much as it would have if it had known the truth about the situation. The cases governing the liens of subcontractors, therefore, have no application.

It is next contended by counsel for appellee that the contract was one of chance, and that where a contractor agrees for a fixed sum to excavate a lot in accordance with definite plans and specifications he will not become entitled to additional compensation because the character of soil or rock encountered is more troublesome than was anticipated. The rule is as stated as has been held by this court in the case of Stevens et al. v. Lewis et al., 168 Ky. 648, 182 S. W. 840, and Runyan v. Culver, 168 Ky. 45, 181 S. W. 640, L. R. A. 1916F, 3. It is the law as written by this court that where a contractor undertakes to excavate a lot his contract is known as a "chancing" contract, but that rule applies only in cases where the difficulties encountered are natural and could not reasonably have been anticipated by either of the parties to the contract. If the natural formations are different from what was expected by the contractor, he cannot claim extra compensation because of the increased cost of doing the work. But we find no case applying the

rule where there is an artificial obstruction concealed under ground which was known to the owner and unknown to the other parties. Here we have hidden concrete and marble well concealed by the surface of the lot, and that surface, according to the allegations of the petition, which concealed the obstruction, had been made by the owner.

It is argued that the specifications required appellant to visit and carefully examine the premises where the building was to be erected so as to become thoroughly familiar with existing conditions and fully understand the nature and scope of the work before submitting proposals. If appellant visited the lot and made an inspection, as he alleged in his petition, he found a lot apparently in its natural state. There was nothing to indicate the hidden obstruction. He was within his rights in assuming that the work of excavating would be determined by the character of material which had been placed under the lot by nature. The provision in the specifications that the contractor should remove from the premises all surplus excavated material and debris did not put him on notice that there would be any such to be removed except that which was created by the work which he did in carrying out the contract.

It is further contended that it was generally known in the neighborhood that the swimming pool had existed and that the old building had been removed, and that the swimming pool had been filled up. That is a matter of defense. If it should be established that appellant knew the condition, or by the exercise of ordinary care should have known it, it could not claim that it had been deceived in the making of the contract.

It is said by counsel for appellee, in their brief, that the rule applied to the intentional failure of a vendor to disclose the existence of latent defects rendering an article sold unfit for the purpose for which it was bought, is actionable fraud, has no application as this was not a question of sale. The cases cited and relied on by counsel for appellant on this point are Adkins v. Stewart, 159 Ky. 218, 166 S. W. 984; Weikel v. Sterns, 142 Ky. 513, 134 S. W. 908, 34 L. R. A. (N. S.) 1035; and Crescent Grocery Co. v. Vick, 194 Ky. 727, 240 S. W. 388. In these cases, as well as in some opinions since written, it was held that in the sale of real estate the intentional suppression of facts known to the vendor and unknown

to the vendee would give rise to an action of deceit if the vendee was damaged by reason of the fraudulent concealment, and the cases go far enough to hold that in case of a latent defect known to the seller his mere silence with knowledge that the buyer is acting upon the assumption that no defect exists is sufficient to give rise to a cause of action against the vendor for his intentional omission to disclose such latent defects.

While these cases relate to transactions of a different character from that before us, yet, by analogy, the principles announced in these cases may be applied to the case before us.

It was held in the case of Hood v. Todd, 139 Ky. 426, 58 S. W. 783, 22 Ky. Law Rep. 837, that the doctrine that equity will relieve against a contract made by mutual mistake where the consideration has failed has no application to what is called a ''chancing'' bargain. If the parties have knowingly entered into a speculative contract in which they intentionally speculate as to the results, a party cannot complain if the facts upon which the agreement was based turn out differently from what was expected. But in that case, quoting from 2 Pom. Eq. Jur. sec. 855, the court held that the rule did not apply except where there was an absence of bad faith, violation of confidence, misrepresentation, concealment, or other inequitable conduct.

Counsel for appellant relies on the case of U. S. v. Atlantic Dredging Co., 253 U. S. 1, 40 S. Ct. 423, 424, 64 L. Ed. 735. That was a case in some respects similar to the one before us where there was a concealment of facts by the government. The specifications provided that the materials to be removed were, in the belief of the government, mud and sand, but the bidders were expected to examine the work and determine for themselves as to its character. The government did not guarantee the accuracy of its belief that the material to be excavated was mainly mud and sand. There had been test borings referred to in the specifications, and the results could be seen by the bidders, but there was no guaranty as to the correctness of the borings, although it was believed that the information disclosed thereby was trustworthy. The log of the borings did not reveal that in making them there had been encountered a sticky mud, or substance, and the bidders made no independent examination. In carrying out the work the contractor found this

sticky mud which was known by the government, but not disclosed in the reports of the borings. The Supreme Court held that the contractor was entitled to recover. The court said:

> "The government asserts that there was no misrepresentation, basing the assertion upon the declaration of the specifications that no guarantee was intended and the admonition to bidders that they must decide as to the character of the materials to be dredged, and to 'make their bids accordingly.'
>
> "The assertion puts out of view, we think, other and determining circumstances. There was not only a clear declaration of the belief of the government that its representation was true, but the foundation of it was asserted to be the test of actual borings, and the reference . . . of what the borings had disclosed."

That case is differentiated from the one before us by the fact that appellee made no representation of any kind as to the character of material to be excavated. The opinion, therefore, does not support the contention made by appellant based upon that case.

The right to recover for deceit should not be restricted to the immediate parties making the contract. If a third party is injured by the deceit, he should be allowed to recover against the one who made possible the damages to him by practicing the deceit in the first place. Kuelling v. Roderick Lean Mfg. Co., 183 N. Y. 78, 75 N. E. 1098, 2 L. R. A. (N. S.) 303, 111 Am. St. Rep. 691, 5 Ann. Cas. 124. "To render one liable in an action of deceit no privity of contract between the plaintiff and defendant need be shown." 12 R. C. L. p. 402. The author cites Talcott v. Friend, 179 F. 676, 103 C. C. A. 80, 43 L. R. A. (N. S.) 649, and Silver v. Frazier, 3 Allen (Mass.) 382, 81 Am. Dec. 662, to support the text.

The allegations in the petition are sufficient to state a cause of action, and the judgment is therefore reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.