315 P.2d 521

**R. H. CHAPMAN, Plaintiff-Appellee,**

v.

**Frank LOCKE, and Mary Locke, Executrix of the Estate of W. C. Locke, Deceased, Defendants-Appellants.**

**No. 6245.**

Supreme Court of New Mexico.

Sept. 12, 1957.

Jay Morgan, Portales, for appellants.

Mears & Mears and Fred Boone. Portales, for appellee.

SADLER, Justice.

The appellant, Mary Locke as executrix of the last will and testament of W. C. Locke, deceased, complains of a judgment rendered against her by the district court of Roosevelt County in an action begun against her testator during his lifetime in which she was substituted as a defendant following his death.

The plaintiff, R. H. Chapman, by his complaint filed in the case sought recovery against W. C. Locke and Frank Locke, his son, on an oral agreement to drill an irrigation well on the land of the former. Within a short time following the filing of the complaint and service on W. C. Locke, he died and Mary Locke, one of his daughters, and executrix of the last will and testament of W. C. Locke, deceased, was by order of the court substituted as a party defendant in his place and stead.

The two defendants, Mary Locke, as executrix aforesaid, and Frank Locke filed separate answers in which each asserted a counterclaim against the plaintiff, R. H. Chapman, for the sum of $311.59 said to have been paid out to Smith Machinery Company for services in attempting to run a well test rendered necessary, as alleged, because of faulty and improper workmanship of plaintiff in drilling the wells. Each defendant sought judgment against plaintiff by way of counterclaim on this item for the amount mentioned.

Mary Locke, as executrix aforesaid, not only sought judgment on her counterclaim against plaintiff for benefit of her father's estate for the item of $311.59, claimed by Frank Locke in his own behalf but, in addition, she prayed judgment for $5,000 for the benefit of her father's estate as damages for crop loss for the 1956 cropping season through plaintiff's failure to complete a serviceable well to supply irrigation water for that cropping season.

The cause was tried by the court without a jury, following which the court rendered judgment against Mary Locke, as executrix aforesaid, in the sum of $614.04. No judgment was rendered against Frank Locke, nor is any cross-appeal prosecuted for the court's failure to award recovery on the counterclaim of either party. Hence, the appeal is before us solely on the objection of Mary Locke as executrix by reason of the judgment rendered against her.

At the conclusion of the trial the court made findings of fact and conclusions of law, as follows:

"Findings of Fact

"1. On or about September 1, 1955, the Plaintiff, R. H. Chapman began the drilling of an irrigation well on lands, owned by W. C. Locke, pursuant to an oral agreement entered into between the Plaintiff and W. C. Locke and the Defendant Frank Locke.

"2. That the terms of the agreement required the Plaintiff to drill a straight hole to the red beds and to

case the same with casing to be furnished by the Lockes.

"3 That the Plaintiff was to be paid the sum of $3.00 per foot for his work in drilling and the reasonable and customary charge for casing if desired by the Defendants.

"4. That the Plaintiff thereafter drilled the well in compliance with the agreement.

"5. That the well drilled was one hundred and eighty nine feet deep.

"6. That the well was cased by the Plaintiff with casing furnished by the Defendants.

"7. That the work done by the Plaintiff was at the request of, and benefit of, W. C. Locke, now deceased.

"8. That no part of the indebtedness owing to the Plaintiff has been paid.

"Conclusions of Law

"1. That this Court has jurisdiction of the persons and subject matter involved herein.

"2. That the Plaintiff is entitled to a judgment against Mary Locke, Executrix of the Estate of W. C. Locke, Deceased, in the sum of $614.04.

"3. That the Cross-Complaint of Mary Locke, Executrix of the Estate of W. C. Locke, deceased, should be dismissed."

While the defendant listed some six points as grounds for reversal of the judgment reviewed, actually all may be reduced to two in number for purposes of determining this appeal. The first is of a basic character, namely, that there is no substantial evidence to support the finding made by the court that there was ever any agreement, verbal or otherwise, between the plaintiff and the testator, W. C. Locke, for the drilling of an irrigation well on the lands of the decedent. The second is ancillary thereto and is to the effect if any such agreement be established, it is not adequately corroborated within the governing statute.

The record discloses substantial evidence, however, that there was such an agreement, if W. C. Locke, the decedent, possessed sufficient competency to enter into it either, personally, or through his son, Frank Locke, acting as agent in his behalf. It matters little whether the court's ultimate fact found that he made such a contract rests on the view that he, personally, made the contract, or entered into it through his son, Frank Locke, acting in his behalf. Obviously, if he was incompetent he could neither contract, personally, nor through an agent. A review of the evidence is quite satisfying, however, it affords substantial support for the court's finding that he knowingly made the contract through his son, Frank, for the drilling of the well in question.

While undoubtedly the father, W. C. Locke, was in ill health for some months prior to his death, suffering from a severe case of diabetes, it was in evidence that he continued to execute legal documents to the time of his death. Even the son, Frank Locke, did not conclude, as he testified, until after this suit was filed, that his father was mentally incompetent. A well had been drilled shortly prior to this one of which he well knew and seemed proud of it. In fact, about this time he had signed an application for a loan in an amount which embraced funds to pay for an irrigation well.

The testimony showed that the father owned the land on which the well was to be drilled; that the father and his children were all in the dairy business together and that each could check on their joint account, the son, Frank Locke, exercising an over-all management of their affairs. All dwelt together in the same home on land owned by the father, except for a short period when Frank Locke, the son, was absent teaching school in Arizona.

It also appeared that the plaintiff and his wife had been down to the Locke place and had talked with both the son and father about drilling the well. She, the plaintiff's wife, testified to being present at the Locke home at one time during the progress of the drilling when decedent was present and an offer was made by the Lockes to pay for the drilling with six cows. In addition, Smith Machinery Company, seemingly pursuant to practice, had billed W. C. Locke for the casing.

Undoubtedly, the testimony was conflicting on the mental competency of W. C. Locke but a reading of the entire record is satisfying that the trial judge had ample evidence upon which to rest his finding of a contract by one of competent mind resting on sufficient corroboration in the record to support the finding so made. The plaintiff's wife was a competent witness in this behalf, even though the holder of a community interest in her husband's estate. Hendricks v. Hendricks, 55 N.M. 51, 226 P.2d 464; Adams v. Leyba, 57 N.M. 1, 251 P.2d 290.

It was peculiarly the function of the trial judge to weigh the evidence and say where the truth lay. The mere fact that if, ourselves, the initial trier of the facts, we might have resolved the conflicts in the testimony, differently, from the way the trial court did (though this is not to suggest we would have done so), does not place it in our hands to overturn the findings and substitute our own for the trial judge's appraisal of the facts. Marchbanks v. McCullough, 47 N.M. 13, 132 P.2d 426.

It should not be overlooked that the defendant, Mary Locke, as executrix aforesaid, while denying by her answer that W.

C. Locke ever made a contract with the plaintiff for drilling of the well in question, at the same time filed a cross-complaint against the plaintiff. In it, among other things, she affirmed the existence of a contract between Frank Locke and the plaintiff, R. H. Chapman, to drill the well in question *on her father's land* and asked damages in the sum of $5,000 *for benefit of his estate* for breach of the very contract whose existence she denied, except to claim it was with her brother, Frank Locke, rather than her father, W. C. Locke.

The trial judge may have looked askance at this somewhat inconsistent position of defendant, Mary Locke, as an attempt to play "fast and loose" with the court. To say the least, it could hardly have helped her position in the case when it came to appraising the facts. Compare, 31 C.J.S. Estoppel § 116, p. 370; Home Savings Bank of Des Moines, Iowa v. Woodruff, 14 N.M. 502, 94 P. 957; Kandelin v. Lee Moor Contracting Co., 37 N.M. 479, 24 P.2d 731. The trial judge accepted as true the testimony that Franke Locke was the moving spirit in making the contract, acting not for himself, however, but on behalf of the father, W. C. Locke, whose land would have the benefit of the well.

It follows from what has been said we find no error calling for a retrial of this case. Accordingly, the judgment will be affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

KIKER, J., did not participate.