**552 P.2d 796**

**CITIZENS BANK, a state banking corporation, Plaintiff-Appellant and Cross-Appellee,**

**v.**

**C & H CONSTRUCTION & PAVING CO., INC., a New Mexico Corporation, C. R. Davis and Alice J. Davis, his wife, Paul D. Wood and Wanda Wood, his wife, Defendants-Appellees,**

**v.**

**FIDELITY NATIONAL BANK, a national banking corporation, Intervenor-Appellee and Cross-Appellant,**

**v.**

**James C. DAVIS, Third Party Defendant-Appellee.**

**No. 2161.**

Court of Appeals of New Mexico.

July 6, 1976.

Rehearing Denied July 20, 1976.

Certiorari Denied Aug. 4, 1976.

Jay R. Gentry Ortiz, Knight, Sullivan, Villella & Skarsgard, P. A., Albuquerque, Montgomery, Federici, Andrews, Hannahs & Buell, Santa Fe, for appellant Citizens Bank.

Thomas H. Horn, Horn & Schowers, Albuquerque, for appellee C & H Constr., C. R. Davis, Alice J. Davis and for third party defendant-appellee James C. Davis.

Charles N. Glass, Threet, Threet, Glass, King & Maxwell, Albuquerque, for intervenor-appellee and cross-appellant Fidelity National Bank.

OPINION

SUTIN, Judge.

Judgments were entered in the trial court, from which appeals were taken, as follows:

(1) On a counterclaim against the Citizens Bank, C. R. Davis and Alice Davis were awarded $79,998.04 compensatory damages and $20,000.00 punitive damages, and on the cross claim of James C. Davis, he was awarded $200,000.00 compensatory damages and $50,000.00 punitive damages. These judgments are based upon fraudulent conduct of Citizens Bank committed against C & H Construction & Paving Co., Inc. (C & H) in which the Davises were officers and managers, and as a direct result of which, the Davises were damaged. Citizens Bank appealed these judgments. We affirm.

(2) Citizens Bank was awarded a priority over Fidelity National Bank to all sums obtained from accounts receivable by the receiver of C & H, to the extent of $58,398.04, together with an attorney fee of $5,000.00. Fidelity National Bank and the Davises appeal this final order. We reverse as to the issue of priority.

A. *Facts Most Favorable to Davis Judgments.*

The Davises' judgments arose out of a borrower-lender relationship between C & H and the Citizens Bank.

All of the corporate shares of C & H were owned by Founders Investments. All of the shares of Founders Investments were owned by C. R. Davis' mother, with C. R. Davis and James C. Davis acting as officers and managers of C & H. On November 1, 1972, James C. Davis executed an unsecured promissory note on behalf of C & H to Citizens Bank in the sum of $40,000.00.

On December 28, 1972, a meeting took place between C. R. Davis, E. M. Wilson, Chairman of the Board of Citizens Bank, and James W. Arrott, Jr., Vice-President and manager of the real estate loan department of the bank. As a result of this meeting, Arrott falsely represented to C. R. Davis, in two respects with intent to injure him and the C & H corporation: (1) that a security interest agreement entered into on the same date between C & H and the Citizens Bank would apply only to a C & H promissory note dated December 28, 1972, and executed the same day. It was the only promissory note marked "secured" in the history of C & H loan transactions with Citizens Bank. This note was satisfied. (2) That a financing statement, executed by C & H, which assigned accounts receivable then due or to become due, with reference to the security interest agreement, would not be filed of record. C. R. Davis relied on these false representations and executed the security interest agreement, the financing statement, and on January 29, 1973, a continuing guaranty of the payment of any C & H indebtedness.

James C. Davis did not have knowledge of these false representations. But the bank knew that James C. Davis executed promissory notes to the bank for money loaned to C & H; that he was an officer and manager of C & H; that he was the son of C. R. Davis and operated C & H business; that he knew of the history of loans made to C & H by the bank on unsecured notes only; that no security interest agreement was outstanding. It may be inferred from the history and circumstances of this relationship that the bank knew that C & H might obtain secured loans from other lending institutions which would affect the security of its own loans to C & H and that C. R. Davis or James C. Davis, or both, might be guarantors of the secured loans.

On January 2, 1973, Citizens Bank, without the knowledge or consent of C & H, C. R. Davis or James C. Davis, fraudulently filed for record the financial statement executed on December 28, 1972 by C. R. Davis on behalf of C & H.

On March 1, 1973, two months later, James C. Davis, without knowledge of Citizens Bank's fraudulent conduct, executed

a continuing guaranty in which he guaranteed to the *Fidelity Bank, intervenor,* the payment of any indebtedness of C & H. On March 8, 1973, he also executed, on behalf of C & H, a security interest agreement to *Fidelity Bank* to secure an indebtedness.

On January 11, 1974, Citizens Bank filed its verified complaint against C & H, C. R. Davis and Alice J. Davis on an *unsecured* promissory note. It also sought enforcement of the security interest agreement of December 28, 1972 which was fraudulently used in these proceedings. By reason of this security interest agreement Citizens Bank obtained (1) the appointment of a receiver to collect the accounts receivable of C & H, (2) possession of the accounts receivable, and (3) a preliminary injunction against C & H to prevent collection of its accounts receivable. These proceedings caused C & H to immediately fold up and cease to do business.

*Fidelity Bank* intervened, and recovered judgment against C & H, and C. R. Davis, Alice Davis and James Davis on their guaranties of $193,641.43 plus interest and attorney fees. It also sought to establish a priority over the accounts receivable of C & H. James C. Davis also suffered other damages by reason of C & H's demise. He had expected C & H to pay this note out of the operation of its business. He was of the opinion that, by dismembering C & H, Citizens Bank prevented C & H from paying the debts guaranteed by him.

B. *Fraud was a proper issue in this case.*

 Citizens Bank contends that fraud was not a proper issue in this case. We disagree.

In the original counterclaim, the Davises claimed that Citizens Bank was negligent in collecting accounts receivable of C & H, and was negligent in seeking appointment of a corporate receiver. The Davises sought punitive damages. This negligent claim was subsequently withdrawn.

After Citizens Bank rested its case, it alerted the court that the Davises would attempt to introduce parol evidence which would directly contradict and conflict with the written expressions of a security agreement executed by C. R. Davis on December 28, 1972. Davis claimed that fraudulent representations were an exception to the parol evidence rule.

The trial court asked Citizens Bank whether it was aware that the Davises were proceeding on the basis of fraud. After extensive argument the trial court found that under all the facts and circumstances of this case, the Davises had brought to the attention of the court and the bank's attorneys that the Davises were proceeding on the basis of fraud.

At this midway point in the trial, the Davises did not seek an amendment of their claim for relief from that of negligence to one of fraud. Citizens Bank did not consent to this change of position. Nevertheless, Citizens Bank did not seek a continuance or any other kind of relief from this emergence of fraud. It had witnesses present who testified against the Davises' claims of fraud. It was neither surprised nor prejudiced by the ruling of the court.

The Davises then put on their testimony to establish a defense to Citizens Bank's claim and to prove their counterclaims based on fraud. Citizens Bank admitted, during presentation of Davises' cases, that Davises' counterclaims were based on fraud.

After judgment was entered, the Davises, pursuant to Rule 15(b) of the Rules of Civil Procedure, moved for an amendment of the pleadings to conform to the evidence on both actual and constructive fraud. The motion was granted.

Rule 15(b) has an extensive history in New Mexico. Quotation of the rule, a statement of its purpose and effect, and the citation of authority are unnecessary to support Davises' motion and the order

granting the motion. Fraud, both actual and constructive, were proper issues in this case.

### ·C. *Davises had a claim for relief.*

■ Citizens Bank contends that the. Davises' judgments should be reversed because the injury was to the corporation and not to the individual Davises; that an individual shareholder or officer cannot maintain an action to recover personal damages for wrongs committed against a corporation.

The Davises, however, claim personal damages by reason of the fraudulent acts of Citizens Bank. They have a claim for relief if that claim is supported by substantial evidence.

Citizens Bank does not contend on appeal that C. R. Davis failed to establish fraud in the transaction that occurred on December 28, 1972, which fraud resulted in damages as a result thereof. It simply contends that James C. Davis and Alice Davis cannot recover because they did not rely on the false representations made by Citizens Bank.

### D. *C. R. Davis and Alice Davis Judgment Affirmed.*

The judgment awarded to C. R. Davis and Alice Davis is based upon fraudulent representations of Citizens Bank made directly to C. R. Davis which resulted in damages to C. R. Davis growing out of the bank's fraudulent conduct. This judgment was not attacked on appeal. It is affirmed.

■ The judgment in favor of C. R. Davis and Alice Davis was a single judgment; Alice Davis did not recover a judgment separate from that of her husband. Affirmance of her judgment does not affect Citizens Bank. The Alice Davis judgment is affirmed.

### E. *James C. Davis Judgment Affirmed.*

Citizens Bank moved for a directed verdict at the close of the case. This motion was denied. We agree.

Citizens Bank contends that James C. Davis cannot recover damages for fraud because he did not rely on the false representations of Citizens Bank; that even though James C. Davis was damaged, he cannot recover damages for fraud committed against the corporation.

The trial court instructed the jury that:

If you find in favor of C. R. Davis and Alice Davis on their Counterclaim and/or in favor of James Davis on his Cross-claim, then you must assess damages. An individual may not recover for injury done solely to a corporation. *An individual may recover for injury done to him personally even though they arose out of wrongful acts toward a corporation.* If a person has become personally liable on an obligation of the corporation by virtue of his personal guaranty then that is a personal injury as opposed to a corporate injury. [Emphasis added].

You are instructed that the liability, if any, of James, or Charles to the Internal Revenue or to Fidelity National Bank, may be a proper element of damages.

■ Citizens Bank did not object to this instruction or challenge it on appeal. This instruction became the law of the case, and is supported by substantial evidence.

■ The fraud committed by Citizens Bank caused C & H to cease operations. It prevented C & H from meeting its obligations. As a proximate result of this fraud James C. Davis personally suffered damages. The tortious claim of James C. Davis against Citizens Bank is a matter of first impression in New Mexico.

Under the facts of this case, it was not necessary for James C. Davis to rely on the false representations of Citizens Bank. Two principles of law are applicable.

(1) "A representation, to be the basis of a fraud and deceit action, need not, in all cases, be made to the party seeking recovery. [Citations omitted]. It is necessary only that the plaintiff be in the class of

persons that the defendant intended to influence." *Mead & Mount Construction Company v. Fox Metal Industries, Inc.,* 511 P.2d 509, 510 (Colo.App.1973) (not selected for official publication); *Crystal Pier Amusement Co. v. Cannan,* 219 Cal. 184, 25 P.2d 839 (1933), 91 A.L.R. 1357 (1934). Under the facts and circumstances of this case, James Davis fell within the category of persons affected by the false representations.

(2) "The right to recover for deceit should not be restricted to the immediate parties making the contract. If a third party is injured by the deceit, he should be allowed to recover against the one who made possible the damages to him by practicing the deceit in the first place." *Highland Motor Transfer Co. v. Heyburn Bldg. Co.,* 237 Ky. 337, 35 S.W.2d 521, 523–24 (1931); *Kuelling v. Roderick Lean Mfg. Co.,* 183 N.Y. 78, 75 N.E. 1098, 111 Am. St.Rep. 691, 2 L.R.A. 303 (N.S.), 5 Annot. Cas. 124 (1905); *Cleveland Wrecking Co. v. Struck Const. Co.,* 41 F.Supp. 70 (W.D. Ky.1941). See also, *Cooper v. Weissblatt,* 154 Misc. 522, 277 N.Y.S. 709 (1935); *Simone v. McKee,* 142 Cal.App.2d 307, 298 P.2d 667 (1956).

These concepts state a broad rule which protects an innocent person from the intentional fraud of another.

The second concept has been placed in the category of liability for tortious acts. *Kuelling,* supra, quotes the following rule which justice dictates:

. . . [O]ne who commits a tortious act is liable for any injury which is the natural and probable consequence of his misconduct. [75 N.E. at 1102].

Three reasons have been stated to support this rule. "First, liability should extend at least as far in fraud, an intentional tort, as it does in negligence cases resulting in personal injury or property damage. Second, the risk of loss for intentional wrongdoing should invariably be placed on the wrongdoer who caused the harm, rather than on the innocent victim of the harm. Finally, a broad rule of liability may deter future misconduct." *Rusch Factors, Inc. v. Levin,* 284 F.Supp. 85, 90 (D. R.I.1968).

The damages suffered by James C. Davis were the natural and probable consequences of the fraudulent conduct of Citizens Bank, and his judgment is affirmed.

F. *Waiver and judicial estoppel did not apply to Davises.*

Citizens Bank offered and the trial court admitted into evidence the preliminary injunction and the order appointing a receiver. These exhibits were offered to establish that the opposing parties had consented to the receivership, and they were thereby barred from asserting an inconsistent position later in the same action. Citizens Bank argues that these orders created a waiver as a matter of law; that under the doctrine of judicial estoppel the Davises were thereafter barred from seeking damages resulting from the receivership. We disagree.

■ The doctrine of "judicial estoppel" is a rule which estops a party from playing "fast and loose" with the court during the course of litigation. *Chapman v. Locke,* 63 N.M. 175, 315 P.2d 521 (1957). It is not, however, strictly a question of estoppel. "Judicial estoppel" simply means that a party is not permitted to maintain inconsistent positions in judicial proceedings. Where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. *In re Madison (Appeal of Marron),* 32 N.M. 252, 255 P. 630 (1927); *Clay v. Texas-Arizona Motor Freight,* 49 N.M. 157, 159 P.2d 317 (1945); *Ollman v. Huddleston,* 41 N.M. 75, 64 P.2d 97 (1937).

(a) *Preliminary Injunction*

■ On January 23, 1974, without a hearing, the trial court entered a temporary restraining order against C & H, its

officers, directors and employees and C. R. Davis, restraining them from disposing of any accounts receivable. James C. Davis was not a party to this proceeding. February 1, 1974 was set as the date to show cause why the temporary restraining order should not continue as a preliminary injunction pending final determination of the merits of this case.

At this hearing, upon inquiry by the court as to anyone in opposition to a preliminary injunction, David F. Cargo, then attorney for C & H and C. R. Davis, said:

> We do, Your Honor. We are in opposition to making the temporary restraining order permanent, and Your Honor I haven't filed any response or pleadings in that I didn't know anything about it until approximately an hour ago.

The trial court decided to vacate the hearing for a week. After some discussion, an order was entered that day, granting a preliminary injunction. At the end of the order appear the words "Submitted and approved David F. Cargo". Other attorneys signed below, "Approved as to form".

Citizens Bank claims that the Davises had consented to the entry of preliminary injunction. We agree with the trial judge who said:

> We, as judges and lawyers, know that using the word "submitted" or "approved," and so forth doesn't necessarily ment that you agreed. . . .

Furthermore, we cannot find any conduct, oral or written, where the Davises took a position at this hearing that the verified pleadings were not fraudulent in content.

(b) *Appointment of a Receiver*

■ On February 7, 1974, a district judge signed an order appointing a receiver. It contained the words "and it appearing that the parties hereto have consented to the entry of this Order . . . ." The order did not contain the signature of an attorney representing C & H and C. R. Davis. James C. Davis was not a party to

this proceeding. C & H and the Davises were enjoined from collecting and using accounts receivable. Here, again, we find no Davis position that the verified pleadings were not fraudulent in content.

The foregoing proceedings all took place within thirty days after the complaint was filed. Due to problems with legal counsel, without fault on the part of C & H and C. R. Davis, we cannot find an answer filed in the record which C & H made to Citizens Bank's complaint. We are convinced that C & H and C. R. Davis did not play "fast and loose" with the court. In any event, no contention has been made, and none can be made, that James C. Davis participated in these preliminary proceedings, or that he was subject to claims of waiver and judicial estoppel.

G. *The trial court did not err on denial of requested instruction on waiver and estoppel.*

■ Citizens Bank tendered an instruction that the Davises "are estopped from complaining about the appointment of a receiver." It contends that this instruction "properly stated the Bank's defenses of waiver and judicial estoppel." There is no merit to this contention. The jury was instructed on these defenses. The instruction denied was a long, repetitive statement. Citizens Bank tendered an instruction on estoppel as an affirmative defense, and this instruction was given.

H. *There was no error on the issue of election of remedies.*

■ Citizens Bank argues that "Repeatedly during the trial, Citizens Bank requested that the Davises be required to elect between rescission of the security agreement and a claim for damages for the tort of fraud." The Davises' only claim for damages was fraud. The jury was so instructed. The jury was not, as claimed, permitted to give the Davises both remedies.

I. *Citizens Bank's priority in regard to C & H's accounts receivable is reversed by verdict of the jury.*

**368**

Citizens Bank and Fidelity Bank had security interest agreements with C & H which covered its accounts receivable.

During the proceedings, the trial court ruled that the claim of Citizens Bank in and to the accounts receivable of C & H, *to satisfy a judgment on its complaint,* had priority over the claim of Fidelity Bank.

By a directed verdict, Citizens Bank recovered judgment against C & H and Charles Davis on the promissory note of August 28, 1973 in the amount of $58,398.-04.

The court instructed the jury that if Charles Davis was entitled to a verdict which *exceeded* this sum, it should render a verdict in an amount by which his damages *exceeded* $58,398.04.

■■■ The jury returned a verdict in favor of Charles Davis of $78,998.04 in excess of Citizens Bank's judgment. *Citizens Bank's judgment was satisfied by the verdict of the jury.* It was not entitled to any sums obtained by the receiver in the collection of the accounts receivable. The priority judgment of the trial court was reversed by verdict of the jury.

Fidelity Bank, on the other hand, had a valid claim to C & H's accounts receivable. It had a priority over Citizens Bank.

■■■ Furthermore, if the judgment of *Fidelity Bank* against C & H and the Davises is satisfied by payment of the Davises' judgments against Citizens Bank, Fidelity Bank is not entitled to C & H's accounts receivable or any sums collected therefrom. Otherwise, it is.

The continuation of the receivership upon satisfaction of the Fidelity Bank judgment, shall terminate. All accounts receivable of C & H will then be owned by C & H and the receiver shall return them to C & H.

The judgments in favor of the Davises are affirmed. The judgment awarding Citizens Bank a priority is reversed. The trial court shall proceed in accordance with the views expressed herein on priority of

Fidelity Bank and the continuation of the receivership.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., dissenting.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

I believe that the plaintiff's first point has merit. Rule 9(b) is very specific "the circumstances constituting fraud . . . shall be stated with particularity." The purpose of this rule, of course, is to prevent surprise. As Judge Medina pointed out in *Clark v. Pennsylvania Railroad Co.,* 328 F.2d 591 (2d Cir. 1964), ". . . [O]ne of the great Twentieth Century contributions to the improvement of judicial administration and the furtherance of effective, timely justice . . . is to do away with the old sporting theory of justice and substitute a more enlightened policy of putting the cards on the table, so to speak, and keeping surprise tactics down to a minimum." The Davises' had ample opportunity to amend their pleadings and elected not to, so they must abide the consequence.

In my opinion there was an abuse of discretion on the part of the trial court in granting the Davises' motion to amend their pleadings more than a month after trial. As was stated in *McLean v. Paddock,* 78 N.M. 234, 430 P.2d 392 (1967): "This is not a situation where evidence on the issue was received without objection and the question thus treated as if it had been raised by the pleadings . . . The record before us is replete with objections. . . ." "The admonition of Rule 15 to permit amendment freely does not permit amendment in every case regardless of a party's diligence." *State v. Electric City Supply Company,* 74 N.M. 295, 393 P.2d 325 (1964). Nonetheless, even after being granted permission to amend their pleadings the Davises did not do so. Consequently, their pleadings on appeal must be considered sans amendment. See *Campbell*

*v. Hollywood Race Ass'n.*, 54 N.M. 260, 221 P.2d 558 (1950).

I am also of the opinion that plaintiff's second point is well taken. As was pointed out in plaintiff's brief-in-chief: "He [James Davis] could not have relied upon the alleged misrepresentations, because he did not even know of them until after this lawsuit was filed." Alice J. Davis did not testify and there is no evidence that she knew or relied upon the plaintiff's representations.

I believe that the appeal of Fidelity National Bank should be denied. However, I do believe that their appeal was timely filed.