633 P.2d 719

Edgar CAMP, Plaintiff-Appellee,

v.

BERNALILLO COUNTY MEDICAL CENTER and The University of New Mexico School of Medicine, Defendants-Appellants.

No. 4766.

Court of Appeals of New Mexico.

June 9, 1981.

**612**

James A. Thompson, Chris Lucero, Jr., Albuquerque, for defendants-appellants.

William H. Carpenter, Albuquerque, for plaintiff-appellee.

## OPINION

WALTERS, Judge.

Following or during an arteriogram performed by a third-year radiology resident, plaintiff suffered a stroke which resulted in some permanent physical disabilities. Defendants appeal from a judgment entered after a non-jury trial which awarded damages of $120,000 to plaintiff, for "medical malpractice committed by agents and employees" of defendants. They raise four issues; however, their first two points require reversal, in our opinion, so we do not reach the additional arguments presented.

Plaintiff's complaint alleged eight different theories of negligence: (1) Defendants failed to obtain prior medical reports and follow precautions that would have been evident from reading prior medical records, including the records of Mr. Camp's admission at St. Joseph Hospital by Dr. Parsons in 1974 for repair of an abdominal aneurysm; (2) Defendants misdiagnosed bilateral femoral aneurysms; (3) Defendants performed a test that was potentially dangerous without adequate diagnosis and indication; (4) Defendants improperly administered a dangerous diagnostic test; (5) Even when the physician encountered resistance in trying to pass the catheter, the physician continued in his efforts to pass the catheter and further traumatized the artery; (6) There was failure on the part of the hospital personnel, including the doctors, to recognize and treat a cerebrovascular accident when it occurred; (7) Defendants proceeded with the diagnostic test in the absence of informed consent; (8) Dr. J. Davenport, the physician who performed the aortogram did not possess/use the knowledge and skill ordinarily known/used by a reasonably well qualified radiologist.

During the trial and over defendants' objections, plaintiff was allowed to amend his pleadings to include allegations of "improper supervision or lack of supervision in not having a staff physician reasonably well

qualified to *participate in the decision*" to have an arteriogram performed.

Prior to trial, counsel was asked by the trial judge whether Dr. Dobernick would be called because, as the judge later explained if Dobernick were to be a witness the judge felt he would have to recuse himself—the doctor was the judge's next-door neighbor. Defense counsel responded that he had not intended to call that witness. At trial, however, and during the plaintiff's examination of his last witness, a medical doctor, some evidence was adduced regarding the resident's lack of expertise, particularly if not supervised, in performing an arteriogram. An objection was made on the ground that there was no evidence that the resident had not been supervised. The court responded:

> Well, I don't know that there's any evidence to that. I assume you're going to tie that up later. And if not, I'll strike the answer. . . . [I]f there are no facts to establish the question, I'll, of course, ignore it.

It was after the medical doctor completed his testimony, and after defendants had moved for dismissal for lack of evidence to support the allegations of the complaint, that plaintiff's motion to amend the complaint was granted. Defendants' objections that this introduced a new theory of negligence for which they had not had the opportunity to prepare, and that it was supported only by the opinion of plaintiff's final witness "based solely on the absence of written notes in the [hospital] record," did not persuade the trial court that the amendment should not be allowed.

Defendants thereupon advised the trial court that it would be necessary to call Dr. Dobernick as a defense witness on the issue of consultation and supervision. The request was refused.

Subsequently, a doctor who performed an examination of plaintiff four or five days before trial and was added as a witness, was permitted to testify beyond the boundaries the court imposed on her testimony when defendants objected to her being allowed to testify at all.

The trial court's findings clearly reveal that plaintiff's case was ultimately decided on the issue of lack of supervision and control—which was the negligence claim allowed by amendment after plaintiff had presented his evidence—and that the arteriogram would not have been ordered or performed if proper supervision and consultation had been obtained before the arteriogram was attempted. This state of facts presents the two issues determinative of this appeal, i. e., (1) Was it error to permit the trial amendment without also permitting defendants to call the judge's neighbor as a necessary defense witness in refutation of the basis for the new claim of negligence? and (2) was defendant denied a fair trial when a last-minute medical witness was permitted to testify beyond a pre-trial limitation imposed by the court?

1. *The trial amendment; the exclusion of essential testimony.*

■ Amendments to pleadings are favored and should be liberally permitted in the furtherance of justice. Rule 15(b), N.M. R.Civ.P., N.M.S.A.1978; *Martinez v. Research Park, Inc.,* 75 N.M. 672, 410 P.2d 200 (1965). However, when amendments to conform to the proof are asked, and there is no express or implied consent (as here), the test is whether prejudice would result to the opposing party if the amendment were allowed, i. e.,

> whether [the defendant] had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory.

3 Moore's Federal Practice 15–172, –173, ¶ 15.13[2]; *see also Wynne v. Pino,* 78 N.M. 520, 433 P.2d 499 (1967).

When the court refused to allow defendants to call Dr. Dobernick to meet the substance of the permitted amendment, it offered to accept a tender of proof. Plaintiff suggests that because defendants did not make a tender, any erroneous exclusion of evidence was cured or waived. N.M.R.Evid. 103, N.M.S.A.1978, requires a tender of evidence if a ruling excludes it, unless the substance of the evidence is clear to the

judge by offer or is apparent from the context of the questioning. The necessity for Dr. Dobernick's testimony was apparent from the moment defendants asked that he be allowed to testify on the supervision/consultation issue. Dobernick was the supervising physician from the Department of Surgery at the time the arteriogram was ordered. His testimony was crucial because plaintiff's expert testified that lack of supervision or consultation in approving the arteriogram procedure would be negligence. The expert agreed, however, that merely because such a consultation was not written into the hospital records, the absence of a record was not conclusive that a consultation had not occurred: "That [documentation] isn't [made] one hundred percent of the time."

Nonetheless, the trial court permitted the trial amendment to allege negligence inherent in a lack of consultation or supervision, based on the expert's assumption that failure to record a consultation indicated there had been none. The amendment added a new theory of negligence between the beginning and completion of plaintiff's case. Plaintiff was granted the advantage of amendment, over strenuous defense objections; yet when defendants requested an adjustment to their pre-trial evaluation of defense witnesses to be called, in order that they might meet the new and unanticipated malpractice charge, the trial court refused to accord to them the same degree of liberality as was shown to plaintiff.

■ The prejudice to defendants in denying them the chance to adequately defend was sufficient to require refusal of plaintiff's motion to amend. This is not a situation where a request for and allowance of a continuance would have helped; *see* 6 Wright and Miller, Federal Practice and Procedure: Civil 480–481, § 1495 (1971 ed.). Defense counsel had consulted with the medical director of the defendant hospital during the lunch hour, after plaintiff's doctor had testified regarding lack of supervision, and had been assured that Dr. Dobernick would give evidence that he had been consulted regarding the proposed arterio-

gram. If the witness who had rendered the diagnostic consultation and supervision were not to be allowed to testify, a continuance would serve no purpose. Consequently, defendants were not required to seek one to preserve the error. *Compare Batista v. Walter & Bernstein*, 378 So.2d 1321 (Ct. App.Fla.1980); *V. C. Edwards Contr. Co., Inc. v. Port of Tacoma*, 83 Wash.2d 7, 514 P.2d 1381 (1973).

■ The court's ruling on the amendment to the pleadings, together with its exclusion of essential defense evidence made necessary after the amendment was permitted, was an abuse of discretion. *See Hambaugh v. Peoples*, 75 N.M. 144, 401 P.2d 777 (1965). If defendants were to be bound by their preparatory assessment of necessary witnesses to defend against the pleaded act of negligence, so should plaintiff have been bound to the pre-trial acts of negligence alleged in his complaint against which the defense had had the opportunity to anticipate witnesses. Defendants were prejudiced, after the amendment was allowed, in presenting their defense upon the merits; N.M.R.Civ.P. 15(b), *supra*, condones amendments of the sort granted when such prejudice does *not* attach. The trial court should have granted the motion to amend *and* the request to call Dr. Dobernick, or it should have denied both.

### 2. *Dr. Hollinger's testimony.*

Trial was set for Monday, May 5th. On the preceding Thursday defense counsel was advised by plaintiff's counsel that a neurologist, Dr. Sonia Hollinger, had examined plaintiff on Wednesday (the day before) and would examine plaintiff's medical records on Friday (the next day) to prepare "an updated evaluation of his [plaintiff's] condition"; and that she "possibly" would be called by plaintiff as an expert witness. Defendants immediately sought a protective order and urged a continuance, contending extreme prejudice if Dr. Hollinger were to be added as a trial witness on such short notice—specifically, that defendants would be denied adequate opportunity to examine her before the trial. Counsel for

plaintiff told the court that he intended to rely on Dr. Hollinger to establish plaintiff's present medical condition, and he listed the conditions Dr. Hollinger had said she found on her Wednesday examination: residual hemiparesis, equilibrium problems and some memory loss. The court refused the continuance but ruled that if the doctor's testimony was different during trial from his understanding that she would "be used just to state his present condition and was not going to testify as to the alleged act of malpractice . . . then I'll grant your motion for continuance."

We agree with defendants' claim that plaintiff was allowed to far exceed the compass of Mr. Camp's present physical condition in his questioning of the witness, and she in her replies. During and in response to defendants' request for a ruling to limit testimony from Dr. Hollinger, the court again imposed this restraint on the questions and answers that would be permitted:

Well, as I indicated before, if you're talking about any of the acts that led up to what they are claiming is the malpractice, . . . she cannot testify as to how those acts were performed or whether they were performed properly. I think we agreed to that.

If it's just testimony about the condition afterwards and how that's changed to date, I see no problem.

Subsequently, when asked to describe an arteriogram, the witness said, in part:

. . . The idea that they have in mind was to go down this way into the descending, so you could see both femorals here, the left and the right. It seems when they go around here, here in the upper part of the descending aorta, are the arteries who goes to the brain, to the right and to the left side of the brain.

He started with a common carotid that subdivides in the top into internal and external carotid.

And they went this way. They were trying to go down this way into the descending artery, but they could not. They struck the thing here, moving it back, who went up this way to the brain.

Defendants objected and asked that the testimony regarding the cause of the stroke be stricken; the court ruled it would not be stricken but, tacitly modifying its earlier ruling, said that "to the extent it's an opinion and not borne out by the records, I'll ignore it as far as establishing any kind of negligence." Several more questions were asked, and eventually the following series of questions, objections, and answers ensued:

Q. Now, does that indicate to you— what does that indicate to you from the history of BCMC's own doctor?

A. It seems to me, you know, that something [w]ent wrong.

(Objection—overruled).

Q. Well, let me ask it this way. Under primary and secondary diagnosis, it says, "Stroke, left internal capsulary thrombosis with dense right hemiparesis associated with an aortogram."

A. Yes.

Q. What does that mean in plain language?

A. In plain language it means they did an arthrogram. And during the arthrogram, a stroke was made. And the only way that this can be done is—

(Lengthy objection, argument by both counsel; objection overruled).

And, finally,

Q. Now, then, Doctor, do you have an opinion as a matter of medical probability what caused—whether the stroke and right paralysis that Mr. Camp sustained was directly and proximately caused by the procedure of the arteriogram?

(Objection—overruled).

A. Yes, I think it's secondary to the arteriogram.

 On all issues made by the pleadings in this case, defendants were entitled to depose every witness fully and exhaustively. *Griego v. Grieco,* 90 N.M. 174, 177, 561 P.2d 36 (Ct.App.1977), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977). "Such a right is basically fundamental to our system of jurisprudence and no court has power to restrict or limit it." *Griego, supra, citing*

*Northwestern University v. Crisp*, 211 Ga. 636, 88 S.E.2d 26, 31 (1955). There is no question that Dr. Hollinger testified beyond the original limits proscribed by the court. She gave her opinion on ultimate issues of fact before the court. Plaintiff's counsel insisted that he had represented she would testify about causation and the relationship of the arteriogram to the stroke, but the record does not bear him out on that contention; and the rulings of the court at trial were not in accordance with its ruling when the matter of Dr. Hollinger's testimony was first brought to the court's attention. Defendants should have been afforded the opportunity to discover the full extent of this witness's testimony in order to adequately prepare to meet it; having reversed its earlier ruling during the presentation of this evidence, the court should have granted the continuance defendants were promised, so that defendants' rights to a fair opportunity to defend and offer additional evidence, if available, would have been protected. *See George M. Morris Const. Co. v. Four Seasons*, 90 N.M. 654, 567 P.2d 965 (1977).

 It is true that the granting or denying of a motion for a continuance rests in the discretion of the trial court and is not to be interfered with except for abuse. *Tenorio v. Nolen*, 80 N.M. 529, 458 P.2d 604 (Ct.App.1969). But Dr. Hollinger's unexpected testimony required, in fairness and justice, that the discretion of the court be exercised favorably toward the continuance. We do not say that defendants will successfully defend when this case is retried, but we do hold that they are entitled to prepare for and conduct a defense free of eleventh-hour surprises.

This case is reversed and remanded for a new trial.

IT IS SO ORDERED.

ANDREWS, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent.

A. *Allowance of amendment to complaint during trial not error.*

Defendant claims the trial court erred in allowing plaintiff to bring in an entirely new, irrelevant, factual basis for support of his allegations of negligence, namely, *lack of supervision* of Dr. Davenport, a third year resident, who performed an aortogram. An aortogram or arteriogram, is a surgical or radiological procedure that has many risks which may result in a stroke, brain damage and paralysis.

During plaintiff's examination of Dr. Ole Peloso, who specialized in general and vascular surgery, a doctor who did not know Dr. Davenport, he testified that a third year resident was not as capable as someone who had gone through the training period. The following exchange occurred:

Q. *Would that be particularly true if he were not supervised in the procedure?*

A. Yes, I think so.

MR. THOMPSON: Object to that, Your Honor. *There is no evidence he wasn't supervised.*

THE COURT: Well, I don't know that there's any evidence to that. I assume you're going to tie that up later. *And if not, I'll strike the answer.*

MR. THOMPSON: I don't know how he would tie it up. This seems to be his last witness. It's again an attempt of Counsel to do a lot of testifying to get a lot of things in this court reporter record which doesn't appear anywhere else.

THE COURT: Well, if there are no facts to establish the question, *I'll of course, ignore it.* [Emphasis added.]

At the close of plaintiff's case, the trial court denied defendants' motion to dismiss pursuant to Rule 41(B) of the Rules of Civil Procedure. Plaintiff moved "to amend to include the allegations, specifically that there was negligence, *improper supervision or lack of supervision* of the resident and medical students in not having a staff physician reasonably well qualified participate in this decision to send him for an arterio-

gram." Over defendants' objection, the trial court granted the motion to amend.

Plaintiff requested the court to find:

\* \* \* \* \* \*

13. A third-year radiology resident does not possess the skill and knowledge to perform an arteriogram, *and there is no evidence that the resident was supervised during the procedure.* [Emphasis added.]

The trial court did not adopt this requested finding. The trial court found that:

\* \* \* \* \* \*

7. At no time prior to the performance of the arteriogram did the resident *consult with the supervising* ar [sic] attending *physician.* [Emphasis added.]

There is a significant difference between "supervision" and "consultation." "To supervise" means "to coordinate, direct, and inspect continuously and at first hand the accomplishment of." "To consult" means "to ask advice of." In effect, the trial court struck the answer of Dr. Peloso to the questions asked above as the trial court said it would do. The amendment allowed to the complaint had no effect upon the trial court's decision.

Unquestionably, the trial court had a duty to allow plaintiff to amend his complaint at the close of plaintiff's case. Rule 15 of the Rules of Civil Procedure. The proper question to have been raised was whether the trial court erred in admitting in evidence the issue of lack of supervision. Even so, the answer was given and defendants did not move to strike the answer. The trial court volunteered to assist defendants in this matter. Otherwise, defendants could not have raised any question of error on this subject matter.

Defendants now seek to escape by claiming prejudice due to the absence of Dr. Dobernick, the supervising physician, during the treatment of plaintiff. In the opening statement, plaintiff stated that Dr. Dobernick never saw the patient. At this point, the court inquired whether Dr. Dobernick would be a witness. Both parties stated that he would not be a witness.

During cross-examination of Dr. Peloso, defendants stated: "Dr. Dobernick will testify." The court said:

Wait a minute. I asked at the beginning of the case whether Dr. Dobernick was going to testify. And I was told by both of you that Dr. Dobernick would not testify, and that's the only reason I decided to hear this case.

After much argument, the court announced that the matter would be argued in chambers after the witness was excused. At the close of the argument, the court stated:

*I'll let you make an offer of proof as to what his testimony would be . . . .*

During defendants' case in chief, the court said:

Well, I indicated yesterday if you wanted to make an offer of proof for the record as to what Dr. Dobernick would testify to, that I would allow that.

MR. THOMPSON: *I intend to, Your Honor.* I'm just trying to ask this witness to identify Dr. Dobernick.

Again the court said:

The issue in question is whether a resident consulted with Dr. Dobernick prior to performing this procedure.

Dr. Pitcher, defendants' witness, was asked to search the records to find evidence of Dr. Dobernick signing the records and answered, "I don't see Dr. Dobernick's signature here."

Finally, and presumably after Mr. Thompson spoke with Dr. Dobernick, the trial concluded. Mr. Thompson was asked by the court:

Do you have any other evidence?

MR. THOMPSON: No, your honor. *I would not make an offer of proof.* [All emphasis added.]

It is no longer necessary to cite authority for the established rule that an offer of proof is essential to preserve the error for appeal. No offer of proof was· made because defendants knew that Dr. Dobernick would not support defendants' position. In reply, defendants state that "[t]here was no

time for consultation with Dr. Dobernick during this trial such as would have permitted a meaningful tender of proof of what his testimony would have been." Nothing appears of record that defendants made any attempt to contact Dr. Dobernick, an employee of defendants. In reply to the cases cited by plaintiff, defendants cite *Epstein v. Waas*, 28 N.M. 608, 216 P.2d 506 (1923); *Houston v. Young*, 94 N.M. 308, 610 P.3d 195 (1980), neither of which are applicable to this issue.

Defendants state:

If this Court permits this amendment to stand, it will result in turmoil in the trial court level in the future, as attorneys will offer like amendments during trail and deprive other parties an opportunity to prepare a defense.

Quite the contrary, Rule 15 was adopted to preserve the rights set forth. "Quotation of the rule, a statement of its purpose and effect, and the citation of authority are unnecessary to support . . . [plaintiff's] motion and the order granting the motion." *Citizens Bank v. C & H Const. & Paving Co., Inc.*, 89 N.M. 360, 364–5, 552 P.2d 796 (Ct.App.1976).

Defendants suffered no prejudice in the ruling of the court.

B. *The trial court properly managed the use of witnesses.*

Defendants state:

Mismanagement of the witnesses by the lower court begins with allowing Dr. Sonia Hollinger to testify over BCMC's objection.

On September 20, 1979, in answer to defendants' request for names of expert witnesses, plaintiff did not list Dr. Hollinger. On May 1, 1980, at a hearing held three days before trial, plaintiff handed defendants a letter which stated:

Therefore, *yesterday* I referred Mr. Camp to Dr. Sonia Hollinger, the neurologist, for an updated evaluation of his condition. *Mr. Camp will be examined by Dr. Hollinger who will review the medical records tomorrow.* This is to advise you that I will possibly call Dr. Hollinger as a witness. [Emphasis added.]

In effect what plaintiff related to defendants was that on Thursday, May 1, 1980, plaintiff had been referred to Dr. Hollinger; that on Friday, May 2, 1980, Dr. Hollinger will examine plaintiff and the medical records. Trial was set for Monday, May 5, 1980. The time available for an interview or deposition was Saturday, May 6, or Sunday, May 7, 1980. The court authorized the taking of the deposition on Saturday, May 6, but defendants said that it was impossible for reasons stated. Plaintiff suggested that Dr. Hollinger would be available to interview, but defendants said they would not act on five minutes notice.

After extensive argument, plaintiff announced what Dr. Hollinger's testimony would be. The trial court then granted plaintiff the right to use the expert testimony. Defendants now claim it suffered extreme prejudice because it lost *the right* to pre-trial discovery.

The trial court did not deny defendants *the right* to pre-trial discovery. Defendants decided not to take the deposition. The reason appears to be "THREE DAYS BEFORE TRIAL," as emphasized by defendants. Rule 30(B)(3) provides that:

The court may for cause shown enlarge or shorten the time for taking the deposition.

It should be noted that there is no requirement of notice. The requirement was omitted to take care of the situation in which notice to take a deposition is so short that the five-day notice of motion required by Rule 6(d) cannot be given. 4A Moore's Federal Practice, p. 30–84 (1981). Plaintiff discovered before trial that two of the doctors listed as witnesses had left the hospital and he had no doctor that practiced in neurology. Therefore, it was requested that plaintiff be examined by Dr. Hollinger, a neurologist. This was good cause shown. But it amply points to danger that exists when plaintiff waited almost the full limitation period in which to file this case. This practice can be as burdensome to a plaintiff as it is to a defendant. It should be avoided

under normal circumstances. It should be available under extraordinary circumstances. However, the statutory period represents the public policy of this State and cannot be condemned.

It appears that defendants made no effort to interview Dr. Hollinger or to take her deposition.

In *Ramm Industries Co. v. Chapman Performance Products, Inc.*, 18 F.R.Serv.2d 1531 (Ill.1974), plaintiff sought a postponement of depositions. The court held that four days notice was reasonable under the circumstances. The court said:

> It is clear to this court that the taking of the deposition ... is necessary and proper to the speedy resolution of the instant litigation. Delay does not appear to be justified.

In the instant case, the court exercised judicial discretion in allowing the deposition to be taken, rather than to delay the trial months hence. It is important to note that this case was tried before the court. To show an abuse of discretion, defendants would have to show that Dr. Hollinger's testimony affected the decision of the court. The parties agreed that Dr. Hollinger would not testify as to any negligence of defendants. During her examination, defendants made objections that the testimony went beyond the agreement. The court stated that it would ignore all such testimony. Even though we agree that plaintiff mistakenly went beyond the agreement, we assume that the trial court ignored the answers. We may also assume, unless shown to the contrary, that questions and answers were the same as those of other doctors who testified.

No reasonable approach to this perplexing problem can impute to the trial court that it acted beyond the bounds of reason. No prejudice to defendants was shown, nor can it be shown. That which might be considered error when the trier of the fact is a jury does not necessarily constitute error when the trier of the fact is a judge. The personality of the judge is the pivotal factor. "Efforts to eliminate the personality of the judge are doomed to failure. The correct course is to recognize the necessary existence of this personal element and to act accordingly." Frank, Law and the Modern Mind, p. 138 (1936).

Defendants close this point with the observation that it was unfair to allow Dr. Hollinger to testify, yet deny Dr. Dobernick the right to testify for defendants. The precise answer is that defendants did not offer proof of Dr. Dobernick's knowledge of the patient's condition or whether actual supervision was exercised by Dr. Dobernick. We may assume, unless shown to the contrary, that Dr. Dobernick did not supervise the aortogram made by the third year student. For this failure, the liability of defendants was established per se.

The trial court properly managed the use of witnesses Drs. Hollinger and Dobernick.

The majority opinion did not decide the other issues raised. I refrain from doing so.